TARRY, Appellant,

v.

STEWART, Appellee.

[Cite as *Tarry v. Stewart* (1994), 98 Ohio App.3d 533.]

Court of Appeals of Ohio,
Lorain County.

No. 93CA005690.

Decided Nov. 9, 1994.

*Teresa Scarberry* and *James Deery,* for appellant.

*James Couch,* for appellee.

DICKINSON, Judge.

Plaintiff Linda Tarry has appealed from a final judgment of the Lorain County Court of Common Pleas in favor of defendant Don D. Stewart on a breach of contract claim and request for imposition of a constructive trust. Tarry and Stewart lived together for almost fourteen years and are the parents of a child. Tarry has argued that (1) the judgment of the trial court was against the manifest weight of the evidence; (2) the trial court incorrectly applied *Lauper v. Harold* (1985), 23 Ohio App.3d 168, 23 OBR 411, 492 N.E.2d 472, to this case; (3) the trial court incorrectly found that an implied contract between the parties had not been formed; (4) the trial court incorrectly found that a fiduciary relationship did not exist between the parties; (5) the trial court incorrectly failed to impose a constructive trust on Stewart's property; and (6) the trial court failed to enforce Ohio public policy. This court affirms the judgment of the trial court because (1) the judgment was not against the manifest weight of the evidence; (2) the issue of the existence of an implied contract was not raised before the trial court; and (3) Ohio does not recognize the right of cohabiting individuals without the benefit of marriage to recover based upon a theory of constructive trust.

I

Plaintiff Linda Tarry filed a complaint on August 10, 1990, alleging that she and defendant Don Stewart were husband and wife by virtue of a common-law

marriage. By way of Count I of an amended complaint filed May 9, 1991, she requested an order declaring the marriage valid. By Count II, she alleged that the parties had "entered into an oral agreement that, during the time they lived together, they would combine their efforts and earnings and would share any and all property accumulated as a result of their individual or combined efforts." Additionally, she averred that the oral agreement between the parties was modified when she became pregnant with the parties' child. She alleged that she agreed to give up her career to care for the child in return for Stewart's financial support. In essence, she alleged that Stewart breached their oral agreement by refusing to recognize that she had a one-half interest in property acquired by him during the course of the parties' cohabitation. She requested that the trial court order Stewart to hold one half of the property acquired during their cohabitation in a constructive trust for her benefit, and prayed for $50,000 in damages.

On September 9, 1991, the trial court granted a directed verdict in favor of Stewart on Count I of the amended complaint and referred the remaining issues, namely Count II, to arbitration. The arbitration panel ruled in favor of Stewart, and Tarry appealed that decision to the trial court. The trial court referred the matter to a referee.

A hearing was conducted before the referee on December 2, 1992. On June 16, 1993, the referee filed a report and recommendation. The referee reported that the parties met and began dating during the summer of 1974. Prior to the parties' cohabitation, Tarry shared an apartment with a friend. During February 1975, Tarry's roommate's boyfriend moved into the apartment she was sharing, and Stewart asked Tarry to live with him. The referee reported that the parties discussed their relationship at that time and agreed that they would move in with each other and would "share expenses and combine incomes for that purpose."

During 1977, the parties moved from the apartment they had been sharing to a home Stewart purchased on Ninth Street in Elyria. The parties made substantial improvements to the home. On February 13, 1978, Tarry gave birth to the parties' child. According to the referee, when Tarry became pregnant, the parties agreed that she would stay home with the child and that Stewart, who was working as a nurse at several hospitals, would pay all of her and the child's living expenses until the child was of school age.

During 1983, Stewart purchased another home on Eastern Heights Boulevard in Elyria and sold the Ninth Street residence. The referee reported that both the Eastern Heights Boulevard and the Ninth Street homes were titled in Stewart's name. After the child was of school age, Tarry finished her education and began work as a medical laboratory technician. The referee reported that Stewart supported Tarry and the child until he moved from the parties' residence during January 1989.

The referee noted that there were four issues presented for determination at the hearing:

(1) A declaration of Tarry's rights;

(2) Whether a partition of the acquired property ought to be ordered;

(3) Whether, based on the parties' relationship, a constructive trust exists in one half of the acquired property in favor of Tarry with Stewart as an involuntary trustee with a duty to reconvey to Tarry; and

(4) Whether Tarry is entitled to a monetary award from Stewart based on their oral agreement and relationship.

The referee concluded that *Lauper v. Harold, supra,* 23 Ohio App.3d 168, 23 OBR 411, 492 N.E.2d 472, applied to the issues raised in this case, and that Stewart was not unjustly enriched at Tarry's expense as a result of their cohabitation. The referee recommended that judgment be rendered in favor of Stewart. Tarry filed objections to the referee's report, and, on July 30, 1993, the trial court adopted the referee's report and entered judgment in favor of Stewart. Tarry timely appealed to this court. She has not assigned as error any issues related to Count I of her amended complaint regarding the trial court's determination that a common-law marriage did not exist between the parties.

## II

Tarry's first and third assignments of error will be dealt with individually. Tarry's second, fourth, fifth, and sixth assignments of error will be consolidated for discussion because those assignments deal with the recognition of legal rights of individuals cohabiting without the benefit of marriage, and the application of *Lauper v. Harold, supra.*

## A

Tarry's first assignment of error is that the trial court's judgment adopting the referee's report was against the manifest weight of the evidence. She has argued that several findings of fact were not sustained by the evidence. Specifically, she has asserted that findings "H" and "K" were not sustained by the evidence, and that there was evidence that established that she contributed funds for assets retained by Stewart. Additionally, she has argued that the evidence "clearly established" that Stewart was unjustly enriched as a result of the parties' cohabitation. A review of the record indicates that the judgment of the trial court was not manifestly contrary to the natural and reasonable inferences drawn from the evidence. *Royer v. C.R. Coblentz Local School Dist. Bd. of Edn.* (1977), 51 Ohio App.2d 17, 5 O.O.3d 138, 365 N.E.2d 889.

The referee made a report and recommendation containing "factual findings" based on the testimony and exhibits presented at the hearing. In finding "H," the referee noted that the furnishings in the parties' first apartment were provided by Stewart. Tarry contended that she contributed a number of furnishings when they first began cohabiting. She testified that she had a number of items that she had brought with her to the relationship:

"Most of my things were in storage at my mother's house. The things that I was actually moving about with me, I had a bed and a chair and my personal belongings and a [1967 Camaro]."

She acknowledged, however, that most of the furnishings in the parties' first apartment were provided by Mr. Stewart:

"Q: Okay. This [first apartment] was furnished with [Mr. Stewart's] items primarily?

"A: Yes."

A judgment is against the manifest weight of the evidence if it is " 'so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.' " *Hardiman v. Zep Mfg. Co.* (1984), 14 Ohio App.3d 222, 226, 14 OBR 250, 254, 470 N.E.2d 941, 946, quoting *Royer, supra,* 51 Ohio App.2d at 20, 5 O.O.3d at 140, 365 N.E.2d at 892. In light of all of Tarry's testimony and the fact that the combined value of all the furnishings was very low, this court cannot conclude that the trial court's adoption of finding "H" was contrary to the natural and reasonable inferences drawn from the evidence.

Similarly, the trial court's adoption of finding "K" was not against the manifest weight of the evidence. The referee reported that Stewart supported Tarry and the parties' child after the child was born until he moved from the parties' residence in January 1989. Tarry has argued, however, that Stewart had not supported her since 1985, when she returned to the work force, and, in fact, she contributed to his support from early 1988 until he left in 1989.

Tarry testified that, after the birth of their child, she did not immediately return to work, but cared for the child and continued her education:

"Q: Okay. And from the time of Adam's birth through June of 1985, were you employed outside the home?

"A: No.

"Q: You got your degree in June of 1985, and did you subsequently become employed?

"A: Yes.

" * * *

"Q:   Okay.   Up to the time that you were, you were employed, [Mr. Stewart] had all the income of the unit?

"A:   Yes."

Tarry testified that she began working part-time during 1985 and assisted with household expenses:

"Q:   * * * [W]as there any discussion about now that you were employed how your money would be utilized?

"A:   We went back to a system where both our monies were used to pay the bills that needed to be paid and, you know, purchase the groceries and purchase clothing and Christmas gifts and birthday gifts and all of that kind of thing.   It was, there wasn't a real separation of funds there.

" * * *

"Q:   So you're working.   And what bills are you paying, if you were paying any specific bills?

"A:   It wasn't, it wasn't delineated that way.   It wasn't here, here is this bill and you pay this, and here is this one and you pay that.   It was, it was just there were funds available for these things and when an expense came up one or the other of us covered it.

"My part-time income didn't match his full-time income, that's for sure, but what money I was making went into the maintenance of the household."

Tarry testified that, during 1988, she began working full-time as a medical laboratory technician and that she began contributing to Stewart's support:

"Q:   Okay.   And when you became employed full-time, was there any discussion that you should pay more of the expenses or—

"A:   My becoming employed full-time was a decision that was made, and this would have been early in 1988.

"I was aware that [Mr. Stewart] was unhappy in nursing.   * * *   And he had already taken some real estate classes, so early in 1988 I made the offer to him, let me work full-time and you leave nursing and find out what it is you want to do.   If real estate is what you want to do, go and do that.   And let me take care of the household finances the way you have for the last seven years.

"And he quit his job at Mt. Sinai and a very short time later began working out of the real estate office of Realty One in North Ridgeville."

When the referee's findings are taken as a whole, they accurately reflect the evidence presented at the hearing.   In addition to reporting that Stewart

supported Tarry and the parties' child until he vacated the residence, the referee reported that:

"When [Tarry] was employed, the parties returned to their former system to use their monies to pay expenses, but there was no joint checking account between them for such purpose at any time during their relationship. The 'household funds' would be placed in an envelope in a drawer and used to pay expenses by one (1) party or the other whenever the need arose."

Additionally, the referee noted that "the parties pooled their respective incomes so far as necessary to pay household bills," and that when Tarry was not employed, Stewart supported her. Accordingly, the trial court's adoption of the referee's finding that Stewart supported Tarry and the child until he vacated the residence, when taken in context with the rest of the referee's findings, was not against the manifest weight of the evidence.

In addition, Tarry has argued that the referee's finding that there was no evidence "which tends to prove that [Tarry] paid for any of the various assets now owned and retained by" Stewart was against the manifest weight of the evidence. She has asserted that there was evidence that proved that she paid for some of the assets that were retained by Stewart. She, however, has failed to point to parts of the record where evidence was presented specifically indicating that she paid for assets that Stewart now has. To the contrary, she has only asserted that her contribution to household expenses "freed funds to be used in purchasing various assets," and that she contributed to the increased value of both the Ninth Street and Eastern Heights residences by "investing sweat equity."

This court has been unable to find evidence that, in addition to contributing to household expenses, Tarry purchased assets Stewart retained after he vacated the residence. Further, the fact that she assisted in repairing the two residences is insufficient to establish that she "paid for" those properties. The trial court's determination that there was no evidence that tended to prove that she paid for assets owned and retained by Stewart was not against the manifest weight of the evidence.

Finally, Tarry has argued that the referee incorrectly determined that there was no basis to find that Stewart was unjustly enriched as a result of the parties' cohabitation. She has asserted that the evidence presented "clearly established" that Stewart was enriched as a direct result of the parties' cohabitation. Specifically, she has maintained that the parties began their relationship when neither had many material possessions and pooled their incomes, resources, and energy to build a family "net equity." Of this "net equity," however, the only assets in her name were bank accounts totaling $710.30.

Unjust enrichment occurs when a party retains money or benefits which in justice and equity belong to another. *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 224–225, 14 N.E.2d 923, 926–927. The evidence presented at the hearing before the referee was insufficient to establish that Tarry's work on the two residences resulted in the unjust enrichment of Stewart. It is not contested that both parties contributed time and effort to repairing the two residences. Unquestionably, as a result of the repairs made to the Ninth Street residence, Stewart realized a financial benefit when the property was sold. The evidence presented, however, does not indicate that Stewart was unjustly enriched by this benefit.

In *Seward v. Mentrup* (1993), 87 Ohio App.3d 601, 622 N.E.2d 756, the Twelfth District Court of Appeals determined that a member of a lesbian couple was not entitled to reimbursement for money and labor contributed toward capital improvement of her companion's house. The court determined that the plaintiff was not entitled to recover under an unjust enrichment theory because the companion "never promised or indicated that [plaintiff] would be reimbursed for improvements to [her companion's] residence." *Id.* at 604, 622 N.E.2d at 758. The court concluded that no unjust enrichment occurred because the plaintiff lived in the house for nine years and enjoyed the benefits of the improvements the parties jointly made to the house. *Id.*

Similarly, Stewart was not unjustly enriched by Tarry's improvements to the Ninth Street residence. The evidence presented indicated that the parties lived at the home on Ninth Street from 1984 to 1989 and presumably enjoyed the improvements made to the house. Accordingly, the trial court's adoption of the referee's findings of fact was not against the manifest weight of the evidence. Tarry's first assignment of error is overruled.

## B

Tarry's third assignment of error is that the trial court failed to acknowledge the existence of an implied contract between the parties. Whether an implied contract existed, however, was not before the trial court, and, therefore, cannot be raised on appeal. See *Van Camp v. Riley* (1984), 16 Ohio App.3d 457, 463, 16 OBR 539, 544–545, 476 N.E.2d 1078, 1084.

As noted previously, Tarry filed an amended complaint on May 9, 1991. Count I of that complaint alleged that a common-law marriage existed, and Count II alleged that an oral agreement between the parties had been breached. It did not contain a claim for relief based upon the existence of an implied contract. On December 30, 1991, after the arbitration panel determined that Stewart was entitled to judgment on Count II of the complaint, Tarry moved to again amend her complaint to include additional allegations. Among the additional allegations

that Tarry sought to add was a claim based on implied contract. On April 16, 1992, however, the trial court denied Tarry's motion for leave to file her second amended complaint. Tarry has not assigned error to that ruling. Accordingly, the issue of the existence of an implied contract was not before the trial court and cannot be raised on appeal. Tarry's third assignment of error is overruled.

## C

Tarry's second, fourth, fifth and sixth assignments of error all involve the legal relationship of individuals cohabiting without the benefit of marriage. Tarry's second assignment is that the trial court incorrectly applied the law stated in *Lauper v. Harold, supra,* 23 Ohio App.3d 168, 23 OBR 411, 492 N.E.2d 472. In *Lauper,* the Twelfth District Court of Appeals held that "mere cohabitation without marriage" did not afford a party the right to have property or assets divided upon termination of the relationship. *Id.* at 170, 23 OBR at 413–414, 492 N.E.2d at 474. In that case, the parties had cohabited for approximately three years without the benefit of marriage. Upon their separation, the plaintiff filed suit alleging that there existed a common-law marriage, that the defendant held property in constructive trust for the plaintiff's benefit, and that the defendant had been unjustly enriched. The court refused to infer a contractual relationship between the parties based on their cohabitation and thus denied any relief based on a constructive trust analysis:

"There are only two types of marriages recognized in Ohio: those entered into by statute * * * and so-called 'common-law' marriages * * *. There is no precedent in Ohio for dividing assets or property based on mere cohabitation without marriage and we think it advisable not to start or follow a trend to the contrary." *Id.* See, also, *Seward v. Mentrup, supra,* 87 Ohio App.3d 601, 622 N.E.2d 756; *Cotter v. Middleton* (June 5, 1992), Lake App. No. 91–L–072, unreported, 1992 WL 188342; *Lehman v. Lehman* (June 4, 1992), Cuyahoga App. No. 60823, unreported, 1992 WL 125236.

This court recognizes that several other jurisdictions have allowed couples who have cohabited without benefit of marriage to obtain relief based upon their contributions to the relationship. See, *e.g., Marvin v. Marvin* (1976), 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106. Tarry has argued that the trial court erred by not adopting such a position. Tarry, however, has failed to present, and this court has failed to discover, any Ohio cases allowing cohabiting individuals to recover under a constructive trust theory for contributions to a relationship. The trial court did not err in applying the rationale of *Lauper* to this case, and did not err by refusing to declare that Stewart held the property accumulated throughout the relationship in a constructive trust for the benefit of Tarry.

■ Further, the trial court did not err by failing to determine that a fiduciary relationship existed between the parties. Tarry has analogized her cohabiting relationship with Stewart to a common-law partnership, and cited several cases from other states that purportedly recognize and enforce fiduciary duties between such individuals. She alleged in her complaint that:

"By reason of that confidential and fiduciary relationship, [Stewart] is an involuntary trustee of an individual one-half interest in all of the property in constructive trust for the benefit of [Tarry], and has the duty to reconvey the same to [Tarry]."

Once again, this court has been unable to discover Ohio cases that impose fiduciary duties on cohabiting individuals. Additionally, inasmuch as Ohio courts do not recognize the imposition of a constructive trust on individuals cohabiting without benefit of marriage, the trial court did not err by failing to determine that a fiduciary relationship existed between the parties.

■ Further, the trial court did not fail to enforce Ohio public policy. Tarry has essentially maintained that Ohio public policy supports the enforcement of contracts between cohabiting individuals and the use of a court's equity powers to "readjust the property interest of parties whose cohabitation arrangement has terminated." She has pointed to the decriminalization of consensual sexual activity between adults, and the inclusion of "person[s] living as a spouse" within a protected class under the domestic violence statute as support for her argument. Ohio case law, however, does not support this proposition. "The law is very clear in Ohio that cohabitation without benefit of marriage, either statutory or common-law, does not create an implied contractual relationship * * *." *Lehman v. Lehman* (June 4, 1992), Cuyahoga App. No. 60823, unreported, at 5, 1992 WL 125236. Additionally, there is "no precedent in Ohio for dividing assets or property based on mere cohabitation without marriage." *Lauper, supra,* 23 Ohio App.3d at 170, 23 OBR at 413, 492 N.E.2d at 474. Accordingly, the trial court did not fail to enforce Ohio's public policy when it refused to impose a constructive trust on the property retained by Stewart. Tarry's second, fourth, fifth, and sixth assignments of error are overruled.

### III

Tarry's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and COOK, J., concur.