OPINION *Page 2 
{¶ 1} Defendants-appellants the Estate of Russell Hyden and Sheryl Sergent appeal the May 23, 2007 Judgment Entry of the Tuscarawas County Court of Common Pleas in favor of plaintiffs-appellees Glenn and Barbara Davis.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Prior to his death in 1999, Russell Hyden lived in a mobile home on real property owned by appellees Glenn and Barbara Davis (hereinafter collectively "Appellees"). After his death, personal property owned by Russell Hyden remained on Appellees' property.
 {¶ 3} Marshall Hyden, Russell's brother, was named the Executor of Russell's Estate. Sheryl Hyden Sergent, Russell Hyden's daughter, is his only legal heir.
 {¶ 4} Appellees filed exceptions to the inventory in the Estate of Russell Hyden. On March 10, 2003, the Summit County Probate Court made a determination as to the personal property included in the Inventory of the Estate of Russell Hyden.
 {¶ 5} As of May 22, 2002, the personal property remained on Appellees' real estate, and was not completely removed before February 2, 2004.
 {¶ 6} Appellees initiated the within action seeking rent for storage of the property. During mediation, the parties settled several issues, leaving the only matter for the trial court to consider being the issue of rent due, pursuant to Appellees' claim for unjust enrichment, implied contract or quasi contract.
 {¶ 7} Following a bench trial, the trial court, via Judgment Entry filed May 23, 2007, issued a decision in favor of Appellees. The trial court awarded Appellees rent in the amount of $7,084.00 for the period of May 1, 2003 to March 10, 2005. *Page 3 
 {¶ 8} Appellants now appeal, assigning as error:
 {¶ 9} "I. THE JUDGMENT GRANTED TO THE PLAINTIFFS WAS NOT SUPPORTED BY THE EVIDENCE."
 {¶ 10} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 11} Initially, Appellants assert Appellees intentionally undermined the Appellant's efforts to remove the property in question; therefore, Appellees are not entitled to damages. Appellants cite the May 23, 2007 Judgment Entry, in which the trial court made the following finding of fact:
 {¶ 12} "7. Before February 2, 2004, the Plaintiffs obstructed the removal of any of the decedent's property, repeatedly requiring that the Defendants provide a Court Order to do so. A Court Order was filed March 10, 2003, identifying Estate property."
 {¶ 13} Later in the Conclusions of Law, the trial court states:
 {¶ 14} "However, the preponderance of the evidence shows that the antagonistic encounters with the Plaintiffs occurred within the first two years following the death of the decedent. No evidence was presented that there were thwarted attempts at recovery after the date of the Summit County Probate Court Order." *Page 4 
 {¶ 15} Although at first blush, the factual finding is facially inconsistent with the Court's later conclusion, we find the trial court's judgment is not against the manifest weight of the evidence.
 {¶ 16} Initially, we note the trial court's statement "Before February 2, 2004," is ambiguous as to the date when the antagonistic encounters began and/or ceased. The court's later conclusion is specific that no such encounters occurred subsequent to the Summit County Court Order.
 {¶ 17} On March 10, 2003, the Summit County Probate Court determined the property which belonged to the estate. The trial court concluded after the date of that order there was no evidence Appellants' attempts to retrieve the property were thwarted due to the actions of Appellees. Although there was testimony at trial the sheriff's office was called out to the property after the March 10, 2003 order, such is not conclusive evidence Appellees were obstructing Appellant's efforts to remove the property on that occasion.
 {¶ 18} In order to recover under a theory of unjust enrichment, a plaintiff must prove by a preponderance of the evidence: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant was retaining that benefit under circumstances where it would be unjust for him to retain that benefit without payment. Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183, 465 N.E.2d 1298. See also Hummel v. Hummel (1938),133 Ohio St. 520, 525, 14 N.E.2d 923. *Page 5 
 {¶ 19} Under Ohio law, unjust enrichment is a claim under quasi-contract law that arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain.Smith v. Padgett (1987), 32 Ohio St.3d 344.
 {¶ 20} Based upon a review of the record and our analysis set forth above, there was competent, credible evidence to support the trial court's judgment in favor of Appellees.
 {¶ 21} Appellants further assert the amount and duration of the trial court's damages award for rent to Appellees is not supported by the evidence.
 {¶ 22} In this action Appellees sought damages in the amount of $160.00 for the rental use of the land, $120.00 for the loss of use of the land and $20.00 for insurance on the property, for a total of $300.00 per month. The trial court awarded Appellees the amount requested from May 1, 2003, until March 10, 2005.
 {¶ 23} An owner of real property is "by virtue of such ownership, competent to testify as to the market value of the property." Smith v.Padgett (1987), 32 Ohio St.3d 344. At trial in this matter, Glenn Davis testified:
 {¶ 24} "Q. Okay. Now Sir, involved in the first and second claim that we made, there was a claim for rent based upon unjust enrichment?
 {¶ 25} "A. Yes, sir.
 {¶ 26} "Q. What did you do to prepare the documents showing the Court the damages or at least the rents due in this case?
 {¶ 27} "A. I tried to come up with a fair price.
 {¶ 28} "Q. Okay. Did you make some sort of a documentation?
 {¶ 29} "A. Yes, sir, I did. I came up with kind of a rule of thumb type thing that — *Page 6 
 {¶ 30} "Q. I mean in your documentation.
 {¶ 31} "A. In my documentation, I —
 {¶ 32} "Q. Hand you what's been marked as Plaintiffs Exhibit H and ask you first of all what that is?
 {¶ 33} "A. This is a schedule of charges that I created to demonstrate what I felt was the proper procedure to follow.
 {¶ 34} "Q. Okay. The document before you is what?
 {¶ 35} "A. This is an estate storage statement.
 {¶ 36} "Q. Okay. And when does it begin?
 {¶ 37} "A. It begins in June 10th of 1999.
 {¶ 38} "Q. And from that date that's shown on the document through December-strike that, to March 1st or 31st
of 2003, what, if any, charges did you charge?
 {¶ 39} "A. There were no charges that forward, Sir. No charges to forward.
 {¶ 40} "Q. From `99 —
 {¶ 41} "A. From `99 to May of 2000, May the 1st of 2003.
 {¶ 42} "Q. Okay. From May 1st of 2003 forward, what, if any, charges for rent did you allocate?
 {¶ 43} "A. Three hundred dollars per month, Sir.
 {¶ 44} "Q. All right. And what does that run through?
 {¶ 45} "A. That runs through up to the middle of March of 2005 when some of the larger items were removed and I tried to adjust the charges to reflect the fact that many of the large items had been removed. *Page 7 
 {¶ 46} "Q. Okay. And from the date of removal sometime in March of 2005, the three hundred dollars a month you were charging dropped to what?
 {¶ 47} "A. Then after that point of March the 17th to the 31st, it dropped to thirty dollars a month.
 {¶ 48} "Q. Okay. And today it still has the car there?
 {¶ 49} "A. Yes, sir, it still does.
 {¶ 50} "Q. Sir, you've owned this land since 1972, during this period of time, what type of farm operation has occurred there?
 {¶ 51} "A. Sir, we are a working farm, I have a cow-calf operation, I also raise horses, contest horses that, and we have an ongoing concern with that.
 {¶ 52} "Q. Have you ever rented some of your lands for pasture or farming throughout —
 {¶ 53} "A. Yes, sir, I have and it's been quite in the distant past because I do now use all of my land.
 {¶ 54} "Q. Okay. And Sir, do you have an opinion based upon your ownership of this land and what you have done in the past, have an opinion as to the fair market rental value of your land?
 {¶ 55} "A. Yes, sir, I think I do.
 {¶ 56} "Q. What is it?
 {¶ 57} "A. Well, my property tax evaluation has it listed at about a hundred and sixty thousand dollars and you figure if you break that down with the acreage, it comes out to about three thousand eight hundred dollars per acre.
 {¶ 58} "Q. Okay. *Page 8 
 {¶ 59} "A. Figuring that the items were rather large, taking up approximately a half acre, that brings it down to about one thousand nine hundred dollars and if you break that up into twelve months, it comes out to approximately a hundred and sixty dollars a month. And then on top of that, you have to figure that this is a working farm. I mean, I need every inch of space that I have in all of my pasture, all of my level property I need so I'm actually figuring that I lost use of the land and I tried to put a price on that, I estimated it to be about a hundred and twenty dollars per month for the loss of use with the fact that my animals need this.
 {¶ 60} "And then on top of that, finally I determined that since I was providing insurance that was covering this material, that ought to be worth about twenty dollars a month so I'll add all of it up together and it comes to about three hundred dollars a month.
 {¶ 61} "Q. Okay. The valuations you spoke to from the County of Tuscarawas, I'm going to hand you what's been marked Plaintiff's Exhibit I. and Sir, I've got a certified copy for you, I'll hand those to Mr. Jackson. And Sir, there are how many pages to that document?
 {¶ 62} "A. There are three pages to this document, Sir.
 {¶ 63} "Q. And those three pages indicate valuations; is that correct?
 {¶ 64} "A. Yes, sir.
 {¶ 65} "Q. I've taken the liberty of putting a small note after my addition on that adding those up. What does Plaintiff's Exhibit I add up to for the parcels that are separated? *Page 9 
 {¶ 66} "A. The ones, about a hundred and sixty-seven thousand sixty dollars to be exact.
 {¶ 67} "Q. And this document is certified —
 {¶ 68} "A. Yes, sir, it is.
 {¶ 69} "Q. — by the county auditor?
 {¶ 70} "A. Yes, sir, it is. That's correct."
 {¶ 71} Tr. at 25-29.
 {¶ 72} In the May 23, 2007 findings of fact, the trial court states:
 {¶ 73} "10. The reasonable monthly rental value of the property occupied by the decedent's personal property is Three Hundred Dollars ($300). The Plaintiffs did not demand payment of rent until May 1, 2003.
 {¶ 74} "11. The reasonable monthly rental value of the property occupied by the Defendants' Thunderbird is Thirty Dollars." *Page 10 
 {¶ 75} Accordingly, we find there was competent, credible evidence to support the trial court's findings and conclusions. Appellants' assignment of error is overruled. The May 23, 2007 Judgment Entry is affirmed.
By: Hoffman, P.J. Gwin, J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the May 23, 2007 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to Appellants. *Page 1