[Cite as *Scott Charles Laundromat Inc. v. Akron*, 2012-Ohio-2886.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SCOTT CHARLES LAUNDROMAT, INC.        C.A. No.     26125

      Appellant

      v.                         APPEAL FROM JUDGMENT
                                     ENTERED IN THE
CITY OF AKRON                     COURT OF COMMON PLEAS
                                     COUNTY OF SUMMIT, OHIO
      Appellee              CASE No.    CV 2010 07 5174

## DECISION AND JOURNAL ENTRY

Dated: June 27, 2012

DICKINSON, Judge.

## INTRODUCTION

**{¶1}** Scott Charles Laundromat Inc. entered into a pair of contracts with the City of Akron Public Utilities Bureau for water and sewer services for two of its Laundromats. The contracts indicated that the buildings were "used for a[n] Industrial purpose" and that Scott Charles would "pay for all of said services at the regular rates as they are now established or may be revised . . . ." For close to 20 years, the Bureau charged Scott Charles the regular rate for an industrial user. In 2010, Scott Charles sued the City for breach of contract, fraud, conversion, and unjust enrichment, alleging that the City should have only charged it the rate for a commercial user. The trial court granted summary judgment to the City. Scott Charles has appealed, arguing that the trial court incorrectly granted summary judgment to the City. We affirm because Scott Charles failed to demonstrate that there were any genuine issues of material fact in dispute and the City was entitled to judgment on its claims as a matter of law.

BREACH OF CONTRACT

{¶2}    In the first count of its complaint, Scott Charles alleged that the City breached their contracts by overcharging it $84,609 for sewer services.  It has argued that, even though the contracts indicated that its buildings were going to be used for industrial purposes, the City should have charged it the rate that was appropriate for the way the properties were actually used, which was as commercial Laundromats.

{¶3}    Under the City's Code of Ordinances, the City charges users of its sewer system different rates depending on whether the customer is a residential, commercial, or industrial user. The Code defines an "[i]ndustrial [u]ser" as "[a]ny user who discharges to the sewage system wastes, other than domestic waste, which are the result of any industrial manufacturing process, trade, or business or the development of any natural resource."  Akron Codified Ordinances 50.20.  It also includes "any user discharging 25,000 gallons per day or more of an equivalent domestic waste, process waste, or a combination domestic-process waste.  Any user shall not be excluded from industrial cost recovery if he contributes any incompatible or toxic substances which affect the efficiency or costs of the treatment works."  *Id*.   The Code defines "[c]ommercial [u]ser" as "[a]ny user of the sewage system not specifically categorized by the Public Utilities Bureau as residential, industrial, or master-metered suburban. Commercial users are generally, but not limited to, establishments engaged in the following: wholesale or retail trade; public administration and government; general business offices; and service industries such as food service, automotive repair, health services, and education services." *Id*.

{¶4}    There was a place at the top of the contracts for the parties to designate whether Scott Charles's properties were going to be used for residential, commercial, or industrial purposes.  On both contracts, the parties selected "industrial."  Under the City's code, a user is

only a "commercial user" if it is "not specifically categorized by the Public Utilities Bureau as residential, industrial, or master-metered suburban." Akron Codified Ordinances 50.20. In this case, Scott Charles's contract with the Public Utilities Bureau specifically categorized Scott Charles's use of the property as industrial. We, therefore, conclude that the City correctly billed Scott Charles at the rate for an industrial user instead of a commercial user. As the Ohio Supreme Court has noted, "[c]ourts do not relieve a party competent to contract from an improvident agreement in the absence of fraud or bad faith." *Ullmann v. May*, 147 Ohio St. 468, paragraph two of the syllabus (1947). The trial court properly granted summary judgment to the City on Scott Charles's breach of contract claim.

FRAUD

{¶5} In the second count of its Complaint, Scott Charles alleged that the City's fraudulent conduct induced it to enter into the contract. "The elements of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Stark County Bd. of Comm'rs*, 23 Ohio St. 3d 69, paragraph two of the syllabus (1986).

{¶6} In its Complaint, Scott Charles alleged that the City concealed the fact that Laundromats are generally of a commercial, not industrial, nature. It also alleged that the City concealed the fact that it charges industrial users a higher rate for sewer services than commercial users. In his affidavit, Scott Charles's president asserted that, at the time Scott Charles entered into the contracts, it told the City's employees that it was going to operate

Laundromats on its properties. He also asserted that City employees marked on the contracts that the properties would be used for industrial purposes.

{¶7} At the time Scott Charles signed the contracts and throughout the contracts' existence, the City's sewer rates have been set out in the City's Code of Ordinances. The Code has also contained definitions of industrial, commercial, and residential user. Accordingly, Scott Charles had, at the very least, constructive notice of those provisions. *See Bakies v. City of Perrysburg*, 6th Dist. Nos. WD-03-055, WD-03-062, 2004-Ohio-5231, ¶ 49 (concluding that recipient of sewer services had constructive notice of city's ordinances); *Ebco Mfg. Co. v. City of Whitehall*, 10th Dist. Nos. 77AP-191, 77AP-223, 1977 WL 200588, *5 (Nov. 29, 1977). We note that, in its brief, Scott Charles has conceded that the City's sewer ordinances were "implicitly made a part of the Contract[s]."

{¶8} Before entering into the contracts, Scott Charles could have reviewed the City's sewer ordinances to determine whether it should be classified as a commercial or industrial user. It also could have discovered that the City charges different service rates depending on the user's classification. Because Scott Charles had constructive notice of the City's policies, we conclude that it could not have justifiably relied on any representations made by City employees at the time it signed the contract. The trial court correctly granted summary judgment to the City on Scott Charles's fraud claims.

CONVERSION

{¶9} In the third count of its Complaint, Scott Charles alleged that the City converted $84,609 of its assets by charging it the industrial instead of the commercial rate. "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *State ex rel. Toma*

*v. Corrigan*, 92 Ohio St. 3d 589, 592 (2001) (quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St. 3d 93, 96 (1990)). The three basic elements of conversion are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Keybank Nat'l Assoc. v. Guarnieri & Secrest, P.L.L.*, 7th Dist. No. 07CO46, 2008-Ohio-6362, ¶ 15 (quoting *Haul Trans. of VA Inc. v. Morgan*, 2d Dist. No. 14859, 1995 WL 328995, *3 (June 2, 1995)). "It is not necessary that the property be wrongfully obtained." *McCartney v. Universal Elec. Power Corp.*, 9th Dist. No. 21643, 2004-Ohio-959, ¶ 14. When property is otherwise lawfully held, "[a] demand and refusal . . . are usually required to prove the conversion." *Ferreri v. Goodyear Local No. 2 United Rubber, Cork, Linoleum & Plastic Workers of Am. Home Ass'n*, 9th Dist. No. 16311, 1994 WL 45740, *2 (Feb. 9, 1994) (quoting *Ohio Tel. Equip. & Sales Inc. v. Hadler Realty Co.*, 24 Ohio App. 3d 91, 94 (1985)).

{¶10} In support of its motion for summary judgment, the City submitted an affidavit from its Public Utilities Bureau's business service administrator. The administrator asserted that he had knowledge of the facts and information related to this case. He also asserted that the City had performed its obligations under the contracts, including furnishing water and sewer services to Scott Charles's Laundromats, taking meter readings, and billing the properties for the usage at the industrial rate. In opposition to the City's motion, Scott Charles did not argue that the City billed it more than was allowed for an industrial user. Its sole argument was the City should have billed it as a commercial user instead of an industrial user.

{¶11} As we explained earlier, the contracts that Scott Charles entered into with the City provided that its properties were going to be used for industrial, rather than commercial or residential purposes. The City, therefore, correctly billed Scott Charles at the industrial rate.

Upon review of the record, we conclude that the trial court correctly granted summary judgment to the City on Scott Charles's conversion claim.

UNJUST ENRICHMENT

{¶12} In the fourth count of its Complaint, Scott Charles argued that it would be unjust for the City to retain the $84,609 difference between what it billed and what it should have billed. According to the Ohio Supreme Court, "unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938). To recover for unjust enrichment, a plaintiff must demonstrate: (1) that it conferred a benefit upon the defendant; (2) that the defendant knew of the benefit; and (3) that, under the circumstances, it would be unjust to allow the defendant to retain the benefit without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938)). "[T]he purpose of such claims is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 2005-Ohio-4985, ¶ 21 (quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954)).

{¶13} "A person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return." *Ullmann v. May*, 147 Ohio St. 468, 478 (1947) (quoting 1 Restatement of the Law, Restitution, Section 107, at 448 cmt. A (1937)). In this case, it is not disputed that the City provided Scott Charles with water and sewer services for two Laundromats. While Scott Charles may have paid more for those services than it thinks it should have, "unless there is fraud or other unlawfulness involved, courts are powerless to save a competent person from the effects of his own voluntary

agreement." *Id*. at 476; *see* 1 Restatement of the Law 3d, Restitution & Unjust Enrichment, Section 2 (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."). We conclude that the trial court correctly granted summary judgment to the City on Scott Charles's unjust enrichment claim. Scott Charles's assignment of error is overruled.

## CONCLUSION

**{¶14}** The trial court correctly granted summary judgment to the City. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
<u>CONCURS</u>

BELFANCE, J.
<u>CONCURS IN JUDGMENT ONLY.</u>

<u>APPEARANCES:</u>

JOSEPH E. OLIVER, Attorney at Law, for Appellant.

CHERI B. CUNNINGHAM, Director of Law, and JOHN CHRISTOPHER REECE and MICHAEL J. DEFIBAUGH, Assistant Directors of Law, for Appellee.