**KLEINHANS, Plaintiff-Appellant v AMERICAN GAUGE CO. etc., Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1933.   Decided April 26, 1948.

Clement V. Jacobs, Dayton, for plaintiff-appellant.
Coolidge, Becker & Wall, Dayton, for defendant-appellee.

## OPINION

By WISEMAN, P. J:

This is an appeal on law from the Common Pleas Court of Montgomery County, Ohio. The action was tried to a jury which returned a verdict for the defendant, The American Gauge Company, on which the court entered judgment.

In his petition plaintiff-appellant alleges he was employed by the defendants, The American Gauge Company and Alfred A. Anglemyer, the principal officer and stockholder of said Corporation, to survey the factory of the American Gauge Company, to obtain orders, estimate costs, supervise engineering, to counsel with defendants upon matters relative to sales and requirements for products which could be manufactured by defendants and to supervise the production, and to assist in obtaining priority ratings and materials. Plaintiff alleges that for his services the defendants agreed to pay the plaintiff the sum of $300.00 per month beginning with the month of March, 1944, and, in addition thereto, a further sum equivalent to 3% on all gross sales, orders or contracts entered into by defendants during the continuance of the arrangement and upon all such sales, orders or contracts subsequently obtained by the defendants by reason of the efforts of the plaintiff. Plaintiff claims that by reason of his service and efforts, orders and contracts were obtained by the defendants amounting to $457,461.90 upon which amount the plaintiff is entitled to 3% or $13,723.85. Plaintiff alleges that $2,100.00 was paid to him by the defendants at the rate of $300.00 per month from March, 1944, through September, 1944, his services being terminated October 3, 1944.

The defendant, The American Gauge Company, in its answer admits that on or about March 2, 1944, it employed plaintiff to act as liaison man on its government contracts with the Material Command, Wright Field, Dayton, Ohio, and with its suppliers, for which service it agreed to pay plaintiff $300.00 per month, which was paid to plaintiff, his services being terminated October 2, 1944. The defendant denies each and every other material allegation in plaintiff's petition.

The plaintiff in his reply denies that he was employed as liaison man and alleges that he was employed by defendants after he had fully informed them of the rates of commission charged by him for such service for other clients, and that the defendants knew that plaintiff held himself out as a responsible and dependable individual offering such service to industries such as that of the defendants upon a monthly retainer plus the agreed percentage of gross sales resulting from orders obtained through the efforts of the plaintiff or in furtherance of his efforts.

The principal issue in this case is raised by the petition of the plaintiff and the answer of the American Gauge Company. The reply raises no material issue other than a denial that plaintiff was employed to perform liaison work. The

plaintiff rested his case on an express verbal contract of employment at $300.00 per month and 3% commission on gross sales obtained by him for defendants or by the defendants by reason of the efforts of the plaintiff. The Company admits an express contract of employment, admits its agreement to pay plaintiff $300.00 per month for his services but denies any agreement to employ plaintiff as a salesman to secure orders and to pay 3% commission on orders or contracts secured by him, or orders and contracts received by the Company through his efforts. The issue to be determined by the jury was simply this: Was the plaintiff to receive 3% commission on orders or contracts received by defendant Company through thhe efforts of the plaintiff.

Appellant has filed twelve assignments of error some of which are not specific and have not been urged by counsel for the appellant. We discuss separately the principal errors assigned.

Appellant claims the court erred in requiring the plaintiff to make an election against which defendant he would proceed. The record shows that before any evidence was produced counsel for plaintiff voluntarily made an election to proceed against the Corporation. The record does not show that the Court required an election.

We find no error committed by the Court in instructing the court reporter to read to the jury the testimony of one of the witnesses when requested by the jury after it began its deliberations. The witness whose testimony was read was called by the appellant.

At the end of plaintiff's case, plaintiff asked leave to amend his petition by increasing the amount claimed. An amendment of this nature could not be made without new service being had and a continuance granted. This was neither agreed to nor requested. The amendment was properly denied.

We find no error in the admission or exclusion of evidence prejudicial to appellant. Appellant offered the testimony of two witnesses to show the type of work performed by him at Wright Field where he at one time had been employed, and his ability to perform the service he claims he was employed to perform by the Company as claimed in his petition and reply. As we view it, neither the petition nor reply raised a material issue on this matter. With respect to allegations in the petition respecting the nature of his services, the defendant Company denied he was employed to perform such services. His capability was not made an issue. The evidence which was sought to be introduced and which was later proffered was neither revelant nor material to the issue pre-

sented. The record shows that this evidence was excluded at this time as being out of order. The court did not rule out this testimony, but it was understood the witnesses could be recalled later, which plaintiff did not see fit to do. Prejudicial error did not result from the ruling of the court.

The appellant claims "the court erred in confining the issue to an express contract and conversely in failing to allow appellant to offer evidence upon an implied quantum meruit for the value of the service rendered under an express contract."

The plaintiff sued on an express contract. At no time did plaintiff move to amend. It is easily understood why a motion to amend to conform to the proof was not made. There was no evidence introduced from which a contract of employment could be implied whereby the basis of compensation would be the reasonable value of service rendered. Throughout the trial the plaintiff and his counsel contended that an express contract was entered into on March 2, 1944, whereby the defendant Company agreed to pay the plaintiff 3% commission on orders obtained by him. The defendant consistently denied that the contract of employment included a 3% commission. On July 28, 1944, a dispute arose between the plaintiff and defendant as to whether plaintiff was entitled to a 3% commission on sales made by him. At that time the plaintiff claimed a 3% commission on a certain order and the defendant denied that there was any commission due the plaintiff. Negotiations between the parties continued up to October 3, 1944, on which date the services of the plaintiff were terminated. During these negotiations the rights and obligations of the parties under the contract of employment entered into March 2, 1944, were discussed. Evidence of an implied contract cannot be extracted from these conversations. The record is voluminous and contains repeated assertions by plaintiff and his counsel that they were relying on an express contract under date of March 2, 1944. At the end of his direct examination, the plaintiff testified as follows:

"Q. I will ask you whether or not the 3% is the same as you claim was agreed upon on March 2nd and March 30th, or thereabouts, 1944?

A. I said my agreement with Mr. Anglemyer March 2nd was for a retainer of $300.00 per month and 3% of the business that I was able to secure for him. At the end of March Mr. Anglemyer said that he would pay me 10% on his standard items, in addition to the 3% and the $300.00 monthly retainer fee.

* * *

Q. Now Mr. Kleinhans, I will ask you whether or not there was any change made in your agreement at any time with Mr. Anglemyer following that March 2nd meeting?

A. With this difference: That as of the end of March he said he would pay me 10% on his standard items, in addition to the 3% on the work that I was to get for him."

No claim is made for 10% on standard items since no sale of standard items was made. Again when an objection was interposed, the record shows a statement of counsel as follows:

"Mr. Becker: Are you relying on a contract made in September or in March? Can we understand what your claim is?

Mr. Jacobs: Contract in March. He agreed to pay it several times."

To have admitted evidence relative to an implied contract and to have charged the jury in regard thereto would have been erroneous. This case was tried on the theory of an express contract the terms of which were in dispute. Where there is an express contract, between the parties, none can be implied. **Creighton v City of Toledo, 18 Oh St 447, 452;** Hawkins v United States, 96 U. S. 689, 697; **Linn v Wehrle 35 Oh Ap 107, 111, 172 N. E., 288; Cale v Kiner, 44 Abs 407,** 63 N. E. (2d) 839; **9 O. Jur. p. 243, Section 9.** In Creighton v City of Toledo, the first syllabus is as follows: "Where there is an express contract between parties, none can be implied. The maxim expressum facit cessare tacitum applies in such cases." In Hawkins v United States, the court on page 697 said: "Implied promises or promises in law exist only when there is no express promise between the parties,—expressum facit cessare tacitum." This case does not fall in that category of cases where the action is one of general assumpsit and permits evidence of an express or an implied contract. **Railway Co. v Gaffney, 65 Oh St 104, 61 N. E. 152; C. & S. Bell Tele. Co., v Cincinnati Street Ry. Co., 48 Oh Ap 195, 200,** 193 N. E. 230; **Wampler v Staley, 41 Abs 592, 595, 59 N. E. (2d) 65.**

The court did not commit prejudicial error in confining the issue to an express contract and in failing to charge the jury relative to the plaintiff's right of recovery on an implied contract. Furthermore, the record does not show that plaintiff presented a definite charge on an implied contract. Only a general exception was taken to the charge. Reversible error cannot be predicated upon the failure of the court to charge on a particular phase of the case, if the charge as given is correct and not misleading to the jury, unless such

omission is called to the attention of the court, and such other instructions are specifically presented and refused. **Columbus Ry. Co., v Ritter, 67 Oh St 53, 65 N. E. 613; State v McCoy, 88 Oh St 447, 103 N. E. 136; State v Driscoll, 106 Oh St 33, 138 N. E. 376; Portney v Frank, 77 Oh Ap 357, 65 N. E. (2d) 290. Hubbard, Admrx. v C. C. C. Highway, Inc., 50 Abs 78; 39 O. Jur. pp. 1008, 1009.**

Plaintiff contended the charge limited plaintiff's right of recovery to a commission on orders secured by him. In the petition, plaintiff alleged that he was entitled to 3% commission on orders secured by him and, also, on orders secured by the defendant by reason of the efforts of the plaintiff. However, the evidence did not support the latter part of this allegation. The plaintiff, both on direct and cross-examination, testified repeatedly that he was to receive a 3% commission on orders secured by him. The charge very properly conformed to the evidence.

Under the issues and in view of the evidence presented, it was not error for the court to charge the jury that it could return a verdict for the plaintiff for a less amount than that claimed in his petition. If the jury believed that the plaintiff was entitled to a commission on orders secured by him it may have been found that he was entitled to a commission only on one or two of the four orders involved.

The charge as given was correct and fully covered the issues in the case. We do not believe the charge in any respect would be misleading to the jury. It cannot be claimed that the charge was misleading from the fact that the jury after it began its deliberations returned to question the court in regard to their authority in arriving at a verdict. At best, it showed that the jury were in doubt as to their full duty. The question as to whether the charge as given was misleading must be determined by the charge itself in view of the issues made and the evidence presented. After additional instructions were given the foreman of the jury answered: "Yes, that is clear to me." And again: "That makes it clear." From the record it may be assumed the jury clearly understood the instructions and its authority and they were not misled thereby.

Appellant claims the verdict of the jury was contrary to the evidence. There was a definite and direct conflict in the evidence on the principal issue in this case, to wit: Was the plaintiff to be compensated at the rate of 3% on gross sales made by him? The defendant Company claimed plaintiff was to be compensated for all of his services at the rate of $300.00 per month. At the end of each month the plaintiff rendered a written statement to the defendant Company for $300.00 in

which he itemized the service which he performed for the defendant Company during the current month. These statements show that some of the service performed for which he was compensated at the rate of $300.00 per month was in making contacts at Wright Field having for its purpose the obtaining of an order or contract for defendant Company. The statement for service rendered between May 2nd to June 2, 1944, stated, "Contact and preliminary ground work in connection with production of C-I, Head, Pilot Bomb Sight." Other statements were for "liaison work." This was the type of work which defendant claimed the plaintiff was employed to do for which he was to be compensated at the rate of $300.00 per month. The record shows that at the end of each month the plaintiff was paid $300.00 by defendant Company.

The verdict of the jury was general, without interrogatories. After a consideration of the entire record, we cannot find that the verdict is against the manifest weight of the evidence or contrary to law. There was ample evidence to support the verdict.

Finding no error in the record prejudicial to the appellant, the judgment is affirmed.

MILLER AND HORNBECK, JJ, concur.