OPINION
In 1976, the village of Moscow in Clermont County, Ohio, ("village") entered into an agreement ("agreement") with the United States ("Government"). Under the agreement the U.S. Army Corps of Engineers ("Corps") was to "establish and conduct a national stream bank erosion prevention and control demonstration program" ("project"). For its part, the village agreed to fulfill certain requirements, including: 1) providing the Government with "all lands, easements, and rights-of-way necessary" to construct and operate the project; and (2) "[o]perat[ing] and maintain[ing] the project upon completion * * * after the [Corps] determines that it is no longer needed for demonstration purposes, not to exceed five years after completion of initial construction * * *."
Plaintiffs-appellants, Allen and Pauline Kappes, Lawrence and Frances Kappes, Otis and Cindie Lanham, Dean and Nancy Bogner, Elizabeth Nevel, and Robert and Kathleen Bare ("owners"), all own residential property that borders on Water Street, "an area of land within the village of Moscow, running * * * parallel to the Ohio River and lying between the Ohio-Kentucky border within the Ohio River and the real property of the plaintiffs." In August 1996, the owners[1] filed a complaint alleging that the village had failed to repair and maintain Water Street and that as a result, "the street has essentially been eroded away by the waters and currents of the Ohio River." The owners also alleged that the erosion of Water Street constituted a hazardous nuisance in the form of a thirty-foot cliff, damaged structures and vegetation on their property, and diminished the value of their property in the amount of $508,000 since "it would be apparent to any prospective buyer that the real property is in the process of being eroded into the Ohio River." Some of the owners complained that they had been induced fraudulently to grant perpetual easements across their property to the village. Finally, the owners alleged that the village had breached a promise to maintain and repair the project.
In September 1996, the owners amended their complaint to add Robert and Kathleen Bare as plaintiffs and to add a cause of action complaining that the village had not paid any of the owners the agreed upon sum of $1 in exchange for the easements over their property. The amended complaint also requested that title of the property underlying the easements and "the real property lying between the * * * easements * * * and the Ohio-Kentucky state boundary which lies within the Ohio River" be quieted in the owners' favor.
In June 1997, the village moved for summary judgment on all claims. Following a hearing, the trial court granted that motion. The owners appealed, presenting three assignments of error for review. We affirm.
In their first assignment of error, the owners complain that the trial court erred in finding that the village is not liable to them under the agreement between the village and the Corps. In addressing the owners' breach of contract claim, the trial court found, in part:
 Plaintiffs cannot recover under the contract between the Village and the Army corps [sic] of Engineers because they are not intended beneficiaries of the contract. Generally, a person cannot sue on a contract under which he is not a party unless he is an intended, and not mere incidental, beneficiary of the contract * * * Plaintiffs may argue that they are intended beneficiaries of the contract with the Corps. The contract did in fact provide for services which would help in avoiding erosion on Plaintiffs' land. Nevertheless, private citizens have no right to enforce governmental contracts on their own behalf, unless a different intention is clearly manifested in the contract. * * * There is nothing in the contract manifesting an intent to allow private citizens a rights [sic] of action against either the Corps or the Village despite the Village Mayor's individual belief. Therefore, Plaintiffs cannot recover under this contract.
On appeal, the owners challenge this finding by the trial court and assert that they are intended beneficiaries of the agreement between the village and the Government and that as such the agreement clearly manifests an intent to allow them to pursue an action against the village.
It is well-settled that only a party to a contract or an intended third-party beneficiary — and not an incidental beneficiary — may bring an action to enforce a contract. Hill v. Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St.3d 36,40-41; Visintine Co. v. New York, Chicago St. Louis RR. Co. (1959), 169 Ohio St. 505, 507. The third party need not be named in the contract; however, to recover on a breach of contract claim, "it must be shown that the contract was made and entered into with the intent to benefit the third person." Chitlik v. Allstate Ins. Co. (1973), 34 Ohio App.2d 193, 196. Merely conferring some benefit on one who claims to be a beneficiary by performing under the terms of a contract is insufficient, "rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." Hill,36 Ohio St.3d at 40, quoting Norfolk Western Co. v. United States (C.A. 6, 1980), 641 F.2d 1201, 1208.
In this case, the owners assert that the "purpose of the contract with the Army Corp [sic] of Engineers was to protect the property of the [owners] from the erosion caused by the Ohio River." The owners offer no authority or evidence to support this statement, and we have not found any. To the contrary, our review of both the record and the federal legislation underlying the project supports a conclusion that the purpose of the project was primarily research and demonstration and not to benefit or protect individual private property owners. The agreement between the village and the Government describes the purpose of the project as follows: "to establish and conduct a national stream bank erosion prevention and control demonstration program." (Emphasis added.)
The federal legislation authorizing the project directs the Secretary of the Army through the Chief of Engineers to conduct a program consisting of: "(1) an evaluation of the extent of streambank erosion on navigable rivers and their tributaries; (2) development of new methods and techniques of bank protection, research on soil stability, and identification of the causes of erosion; (3) a report to the Congress on the results of such studies * * *; and (4) demonstration projects, including bank protection works. See Streambank Erosion Control Evaluation and Demonstration Act of 1974, Pub.L. No. 93-251, Section 32,88 Stat. 12, 22-23 (1974). (Emphasis added.) In addition, a public notice from May 1977 stresses concerns other than the owners' private benefit as critical in determining the project's impact on the public interest. These include: "conservation, economics, aesthetics, general environmental concerns, historical and archeological values, fish and wildlife values, flood damage prevention, land use classification, navigation, recreation, water supply, water quality, and, in general, the needs and welfare of the people."
Summary judgment is proper when there is no genuine issue as to any material fact; the moving party is entitled to judgment as a matter of law; reasonable minds could come to but one conclusion and, viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that nonmoving party. Bostic v. Connor (1988), 37 Ohio St.3d 144, 146, quoting Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). On a motion for summary judgment, the nonmoving party must produce evidence on any issue for which he bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111, citing Celotex v. Catrett (1986),477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552. Thus, if a plaintiff fails to produce evidence supporting the essentials of his claim, summary judgment is appropriate. Welco Industries, Inc. v. Applied Companies (1993), 67 Ohio St.3d 344, 346.
The owners have failed to provide us with any evidence that the purpose of the agreement was to protect their private property or that they were intended as beneficiaries of the project. In addition, the evidence before us states or suggests the contrary. Thus, we find that the owners have failed to show that they are intended third-party beneficiaries of the agreement. Accordingly, they have no right of action against the village on this basis for breach of contract. See City of Akron v. Castle Aviation, Inc. (June 9, 1993), Summit App. No. 16057, unreported (as a general rule, private citizens do not have the right to enforce government contracts unless a different intention is clearly manifested in the contract).
Summary judgment in favor of the village on this issue was appropriately granted. The first assignment of error is overruled.
In their second assignment of error, the owners contend that the trial court erred by "ruling that no writing existed to satisfy the statute of frauds." In their amended complaint, the owners alleged that in consideration for easements over their property, the village agreed to pay each owner $1 and promised that it would construct, maintain, and repair the project.[2]
The owners further alleged that the village has not performed "such maintenance and repair and thus has breached its covenant" with the owners. In ruling on the motion for summary judgment, the trial court rejected this claim by the village, finding that the owners offered "no written evidence" that the village "agreed to perpetually maintain the erosion control project." The trial court reasoned that since "perpetual maintenance" cannot be performed within one year, any agreement by the village to provide such services must be in writing to be enforceable. See R.C. 1335.05.[3] On appeal, the owners argue that the easements granted over the Kappes and Noble property satisfy the writing requirement because they are perpetual easements.
When construing a contract, this court is bound by the parties' expressed intentions as they appear in the plain language of the contract. Aultman Hosp. v. Community Mut. Ins. (1989),46 Ohio St.3d 51, 53. Courts will not give a negotiated, unambiguous contract a construction other than that which the plain language of the contract provides. Id. at syllabus. Intentions not expressed in writing are deemed to have no existence and may not be shown by parol evidence. Id., citing Charles A. Burton, Inc. v. Durkee (1952), 158 Ohio St. 313, paragraph two of the syllabus. In this case, the owners are correct that the easements constitute written agreements between the owners and the village. However, the easements do not contain a promise by the village to repair and maintain the property. The easements grant the village the right to enter the owners' property to work on the project, but do not obligate the village to perform maintenance and repairs. The easements state merely that in exchange for "One ($1.00) Dollar and other good and valuable considerations," the owners "GRANT, BARGAIN, SELL, AND CONVEY unto the [village] * * * a perpetual and assignment right and easement to construct, maintain, repair, operate, patrol and replace revetment and bank improvement works * * *."
Moreover, the owners offer no evidence that the parties intended the easements to be interpreted otherwise. Specifically, there is no evidence of any other agreement, oral or written, between the village and the owners in which the village promised to maintain the project. Indeed, the only evidence this court has found concerning this issue is the deposition testimony of Dean Bogner and Lawrence Kappes stating that the village made no promises or representations concerning maintenance of the project. Accordingly, since the easements are the only written agreement between the village and the owners, and they do not contain a promise by the village to repair or maintain the project, we affirm the trial court as to this issue.
We note further that were there evidence of a verbal agreement under which the village promised to perpetually maintain the project, it would be barred by the statute of frauds. As the trial court points out, a promise to perform perpetual maintenance cannot be performed within one year and an alleged oral contract that cannot be fully performed within one year is unenforceable under the statute of frauds. See Shepherd v. Westlake (1991), 76 Ohio App.3d 3, 9-10. The second assignment of error is overruled.
In their third assignment of error, the owners argue in the alternative that even if they have no claim against the village for breach of contract, they should still be able to recover under quasi contract for unjust enrichment. Unjust enrichment occurs when one party retains money or benefits which belong to another. Hummel v. Hummel (1938), 133 Ohio St. 520, 528. The doctrine of unjust enrichment underlies the basis of an action in quasi contract. A quasi contract or contract implied-in-law is a legal fiction based on equitable principles and is employed to prevent injustice and provide a remedy where none is otherwise available. Paugh Farmer v. Menorah Home for the Jewish Aged (1984), 15 Ohio St.3d 44, 46.
To demonstrate a prima facie case of unjust enrichment, a "claimant must show that he conferred a benefit on another and that the circumstances render it unjust and inequitable to permit the other to retain the benefits without making payments therefore." Lebanon Country Manor Nursing Home v. Stiver (Apr. 10, 1989), Warren App. No. CA88-04-030, unreported, at 7. The theory of unjust enrichment is not available where the parties have fixed their relationship in an express contract and there is no evidence of fraud, bad faith, or breach. Ullman v. May (1947),147 Ohio St. 468, paragraph four of the syllabus. See, also, Gehrke v. Smith (July 6, 1993), Madison App. No. CA92-10-027, unreported, quoting Kleinhans v. American Gauge Co. (1948),83 Ohio App. 453, 459 ("[w]here there is an express contract, between the parties, none can be implied").
In this case, it is undisputed that the easements are valid contracts between the owners and the village. In addition, the owners do not claim that the village was unjustly enriched because the easements were obtained by fraud or in bad faith. Accordingly, there is no need for the legal fiction of a quasi contract.
The owners do allege in their amended complaint that none of them have received the sum of $1 from the village. To the extent that this is true, the village has breached its contracts with the owners. However, an action a upon written contract must be brought within fifteen years. R.C. 2305.06. In this case, the contracts were entered into on or before March 1979 and the instant action was not filed until more than seventeen years later in August 1996. This claim is thus barred by the statute of limitations. The third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and KOEHLER, J., concur.
[1] Robert and Kathleen Bare were not identified in the original complaint, but were added as plaintiffs in the amended complaint.
[2] The owners limit this assignment of error to the easements granted by Allen and Pauline Kappes, Lawrence and Frances Kappes, and James and Janice Noble. Except for the variation in property description, the language of all three documents is essentially the same.
[3] R.C. 1335.05 states:
 No action shall be brought * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *.