**L & H LEASING COMPANY, Appellant,**

**v.**

**DUTTON, Appellee.**

[Cite as *L & H Leasing Co. v. Dutton* (1992), 82 Ohio App.3d 528.]

Court of Appeals of Ohio,
Allen County.

No. 1–91–76.

Decided Sept. 22, 1992.

*Stephen L. Becker,* for appellant.

*James C. King,* for appellee.

HADLEY, Presiding Judge.

Plaintiff-appellant, L & H Leasing Company ("L & H"), appeals from the judgment of the Common Pleas Court of Allen County awarding a verdict in favor of defendant-appellee, James Dutton ("Dutton").

James Gibson ("Gibson") financed his farming operation for 1987 by obtaining a farm line of credit through Mr. Ruff, an employee of Lakeview Bank. The farm line of credit enabled Gibson to purchase seed, fuel, fertilizer, chemicals, and crop insurance. It also enabled Gibson to rent additional land for farming and to lease the necessary farm equipment to operate his farm.

Gibson then went to L & H to lease the needed farm equipment. L & H leased Gibson approximately $800,000 of farm equipment based on letters of guarantee Ruff gave to Roy Harvey ("Harvey"), the vice president and seventy-five-percent owner of L & H. The lease payments were to be paid at the end of 1987.

In 1987, Gibson farmed, in addition to his own land, around three hundred acres of land he rented from Dutton for $100 per acre. Gibson agreed to pay Dutton his rent after he sold his crops.

However, before Gibson sold his crops and paid his creditors, Ruff embezzled the funds from Gibson's farm line of credit. When Gibson sold his crops and deposited the grain checks in his account, Lakeview Bank expropriated the money to reimburse itself. Therefore, Gibson could not pay his creditors including Dutton and L & H.

Dutton contacted Gibson several times for his rent money. Consequently, Gibson agreed to transfer part of the land he owned, free and clear, to satisfy the rent he owed to Dutton.

In 1988, Gibson wanted to continue his farming operation but could not get the necessary financing due to the embezzlement of his 1987 farm line of credit by Ruff. Gibson then spoke with Dutton about financing his farming operation for 1988. Dutton agreed to finance Gibson's farming operation for 1988 with the conditions that Dutton would get crop liens on all acreage and would control how the money was spent.

With Dutton agreeing to finance his farming operation, Gibson then spoke with Harvey regarding the use of the equipment he had leased from L & H. Harvey agreed to let Gibson retain the equipment for 1988 on the condition that Gibson would give Harvey, not L & H, a mortgage on his property for $130,000. Gibson agreed and a mortgage was filed naming Harvey as the mortgagee.

Since Gibson could not obtain credit for seed, fertilizer, fuel or crop insurance because he had not paid the bills for 1987 due to the bank's action, Dutton and Harvey met on several occasions to discuss how to help Gibson keep his farming operation going for 1988. Therefore, Dutton and Harvey agreed that they would co-sign for the purchase of fertilizer and chemicals that Gibson needed for the farming operation.

Gibson could not purchase crop insurance as he had not paid the premiums for 1987. Dutton and Harvey, individually, bought the crop insurance. Dutton purchased crop insurance on all the acres in Allen County, and Harvey, not L & H, purchased crop insurance on the acres located in Auglaize County.

During their discussions regarding Gibson's farming operation, both Dutton and Harvey agreed that any profit made would go to Gibson, alone. There was never a discussion between them as to what would happen if the farming operation lost money.

During the planting season, Harvey paid the fuel expenses with the agreement that he would be reimbursed by Dutton when the wheat crop was sold. Harvey would also be reimbursed for the cost of the crop insurance when the wheat was sold. Consequently, Dutton paid Harvey $4,750 when the wheat was sold on July 2, 1988, which was the amount Harvey paid for the fuel and crop insurance. For some unknown reason, Harvey also paid other bills for Gibson without Dutton's knowledge. Gibson himself repaid Harvey for these bills by giving Harvey surplus corn seed and a motorcycle to sell without ever asking Dutton to pay these bills from his farm account.

Due to a severe lack of rainfall, the yield per acre was not as projected and lower than normal. Since the farming operation lost money, Dutton could not pay all the creditors. Therefore, the lease payments due to L & H for the equipment were not paid from the farm account. Dutton, however, did pay himself $85,000 land rent for six hundred forty acres and a fee for financing Gibson's farming operation. Dutton did not make any payments towards the lease agreement, as he thought Gibson and Harvey had a separate agreement regarding payment to L & H.

Because Gibson did not have the money to pay L & H for the lease payments on the equipment, L & H then repossessed equipment for nonpayment under the lease agreement.

In October 1989, Gibson filed for bankruptcy and was subsequently released of his obligations. However, Harvey did obtain a consent judgment from Gibson for the amount of the lease payments for 1988 after Gibson had filed for bankruptcy.

As Harvey was unable to collect the lease payments from Gibson, he tried to collect part of the amount due and owing from Dutton. Upon Dutton's refusal, L & H filed a lawsuit against Dutton in the Common Pleas Court of Allen County on August 28, 1990, claiming that L & H and Dutton had entered into an oral joint venture to maintain Gibson's farming operation and in the alternative that Dutton was unjustly enriched by Gibson's use of L & H's equipment on his land. After a bench trial, the trial court awarded judgment in favor of Dutton. L & H timely appeals from the trial court's judgment, asserting the following two assignments of error.

## ASSIGNMENT OF ERROR NO. I

"The trial court erred in failing to find the existence of an implied or expressed oral joint venture based on the facts of the case."

L & H asserts that the facts adduced at trial were sufficient to establish a joint venture agreement between Dutton and L & H to assist Gibson in his farming operation for the year 1988.

 A joint venture is an association of persons with intent, whether express or implied, to engage in and carry out a single business venture for joint profit, for which they combine their efforts, property, money, skill and knowledge without creating a partnership. *Ford v. McCue* (1955), 163 Ohio St. 498, 56 O.O. 410, 127 N.E.2d 209. A joint venture need not be established by showing an express agreement, but may be implied or inferred, in whole or in part, from the acts and conduct of the parties. *Bennett v. Sinclair Refining Co.* (1944), 144 Ohio St. 139, 151, 57 N.E.2d 776, 782. Where the existence of the relationship of joint venture is at issue, there needs to be substantial evidence that the parties intended to join their efforts to further an enterprise for their joint profit and the question is one of fact for the trier of fact. *Id.*

 *Ford v. McCue* sets forth four requirements necessary for finding that a joint venture existed between the parties. The first requirement is a joint contract. A joint contract can be express or implied by the parties. The second requirement is an intention to associate themselves as joint venturers.

The parties must have actually intended to become joint venturers. The third requirement is a community of interest and joint control. This gives the joint venturers the right to direct or the authority to control the purpose of the joint venture. The fourth requirement is an agreement for the division of the profit and loss. Between the joint venturers there must be a sharing of the profits and the losses jointly, not severally.

■ L & H asserts that the trial court misapplied the law when it failed to find an existence of a joint venture between Dutton and Harvey because of the definition of "profits" applied by the court. *Ford v. McCue* states the chief characteristic of a joint venture is a profit jointly sought and the profit must be joint and not several. *Ford v. McCue, supra,* 163 Ohio St. at 503, 56 O.O. at 412, 127 N.E.2d at 213. Dutton and Harvey both testified that any profit would belong to Gibson only. Neither Dutton nor Harvey would receive any profit from Gibson's farming operation. Dutton and Harvey both testified that they wanted to help Gibson maintain his farming operation for one more year. Dutton or Harvey never intended to make a profit from Gibson's farming operation for 1988. Their only concern was that Gibson maintain his farm. Dutton and Harvey did not discuss any financial arrangements regarding Gibson's farming operation.

Harvey asserts that although any profit would go to Gibson, the loss should be divided between Dutton and Harvey. This argument is without merit. *Ford v. McCue* states that the losses from a joint venture are to be shared equally or in the same manner the profits are shared between the joint venturers. Whereas there was agreement that Harvey and Dutton would not share in any profit, they would not share the loss.

■ Harvey argues that the trial court did not apply the correct definition of "profits" to a joint venture. "Profit" is defined as the gain realized from business or investment over and above expenditures. Black's Law Dictionary (6 Ed.1990) 1211. Whereas Gibson's farm lost money in 1988, there was no profit above the expenditures.

Since the sharing of profits and losses is an essential element in finding that a joint venture existed, whether expressed or implied, and the uncontroverted testimony by Dutton and Harvey was that they intended that any profit would belong to Gibson, the trial court did not err in holding that Dutton's and L & H's actions were not legally sufficient to create a joint venture; the definition of "profit" applied by the trial court was not in error. Therefore, L & H's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. II

"The trial court erred in failing to find unjust enrichment flowing to the defendant from the plaintiff as a result of the use of the farm equipment."

L & H argues that Dutton was unjustly enriched by Gibson's use of L & H's equipment on Dutton's land and, therefore, Dutton owes L & H the reasonable value of the use of the equipment.

In *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 223, 14 N.E.2d 923, 925, the court stated that liability in quasi-contract arises out of an obligation cast by law upon a person in receipt of benefits which he is not justly entitled to keep. In *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 12 OBR 246, 465 N.E.2d 1298, the court adopted the criteria as set forth by the appellate court as to recovery under a theory of quasi-contract. The three criteria for recovery under the theory of quasi-contract are: " '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment * * *.' " *Id.* at 183, 12 OBR at 250, 465 N.E.2d at 1302.

Applying the above criteria to the facts, it is apparent that the third criterion has not been satisfied. Gibson did the fall plowing on Dutton's land after harvesting his crops. The plowing done to Dutton's land by Gibson was to settle a debt Gibson owed to Dutton. Therefore, Dutton did not retain a benefit without compensation. Whereas L & H has failed to establish that Gibson's use of the equipment on Dutton's land meets the criterion above, L & H's second assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHAW and THOMAS F. BRYANT, JJ., concur.