Plaintiff-appellant, William Gross, appeals a decision from the Mahoning County Court of Common Pleas granting defendant-appellee, Kevin Fizet's, motion for summary judgment on appellant's complaint.
On May 19, 1997, appellant filed a complaint in the Mahoning County Court of Common Pleas demanding judgment against appellee in the amount of $20,063.56 plus interest from November 4, 1992, at a rate of 8 percent per annum. Appellant alleged that he and appellee were the principal shareholders and officers for Compost Wholesalers, Inc. (corporation), that the corporation had borrowed money from Mahoning National Bank (bank), and that such loans were evidenced by a series of commercial notes guaranteed by appellant and appellee as individuals. Appellant further alleged that he had purchased and was assigned the guaranteed notes from the bank and that appellee owed to him $20,063.56 on the guaranteed notes.
On July 17, 1997, appellee filed an answer and counterclaim. In his answer, appellee denied that he had personally guaranteed "the only purported outstanding loan," namely the note dated August 3, 1992, in the amount of $20,650. Appellee set forth a total of thirteen defenses, denying liability on the notes. Additionally, appellee asserted a counterclaim alleging appellant owed appellee in excess of $72,000 in connection with various business endeavors of the corporation. In a July 31, 1997 reply, appellant denied every allegation in the counterclaim.
On December 16, 1997, appellee moved for summary judgment pursuant to Civ.R. 56 on the claim alleged in appellant's complaint. Attached to appellee's motion were exhibits evidencing various commercial notes of the corporation, an assignment from the bank to appellant, and a supporting affidavit signed by appellee. On January 22, 1998, appellant filed a motion for summary judgment on the claims alleged in appellee's counterclaim along with exhibits and a supporting affidavit. Appellant also filed a brief in opposition to appellee's motion for summary judgment. On January 30, 1998, appellee filed a brief in opposition to appellant's motion for summary judgment. Subsequently, each party then filed reply briefs in response to the respective briefs in opposition.
On March 13, 1998, the trial court issued a judgment entry stating:
 "This matter came on for consideration pursuant to the parties (sic.) cross-motions for Summary Judgment. Based on the pleadings, the affidavits, and the relevant case law, the Court finds that there are no genuine issues as to any material facts, and that the Defendant [appellee] is entitled to Summary Judgment on Plaintiff's [appellant's] complaint, and that the Plaintiff [appellant] is entitled to Summary Judgment on Defendant's [appellee's] counter-claim.
 "It is therefore Ordered that the cross-motions for Summary Judgment are sustained."
On March 30, 1998, appellant timely filed a notice of appeal from this judgment entry.
Appellant's claims evolve from a series of loans and commercial notes between the parties, the corporation, and the bank. In 1988, appellant and appellee formed Compost Wholesalers, Inc., a closely held corporation. (Complaint, paragraph 1). Appellant and appellee were the only two shareholders of the corporation. (Complaint, paragraph 1).
At different times, the corporation borrowed funds from the bank for the operation of the business. (Complaint, paragraph 2). The funds borrowed from the bank were evidenced by a series of commercial notes. (Complaint, paragraph 2). The series of commercial notes are dated as follows:
 1. Commercial Note dated December 19, 1989 in the amount of $15,000.00 and stamped "PAID BY RENEWAL";
 2. Commercial Note dated June 18, 1990 in the amount of $15,000.00;
 3. Commercial Note dated September 10, 1990 in the amount of $10,000.00 and stamped "PAID BY RENEWAL";
 4. Commercial Note dated September 17, 1990 in the amount of $14,850.41 and stamped "PAID BY RENEWAL";
 5. Commercial Note dated October 1, 1990 in the amount of $10,000.00 and stamped "PAID BY RENEWAL"; and
 6. Commercial Note dated August 3, 1992 in the amount of $20,650.00.
On or about November 4, 1992, the bank allegedly assigned to appellant all of the rights, title and interest in the commercial notes. (Complaint, paragraph 3; Exhibit G of the Complaint and appellee's motion for summary judgment). Appellant asserts that appellee owes him $20,063.56, plus interest, pursuant to the commercial notes allegedly assigned to appellant by the bank. (Complaint, paragraph 4).
The commercial notes dated December 19, 1989, September 10, 1990, September 17, 1990, and October 1, 1990, have all been stamped "PAID BY RENEWAL" by the bank. (Exhibits A, C, D, and E of the complaint and appellee's motion for summary judgment; Exhibit H of appellee's motion for summary judgment, paragraphs 4 and 5). The June 18, 1990 note (Exhibit B) does not have a stamp indicating that it was "PAID BY RENEWAL." The August 3, 1992 commercial note is signed by appellee in his capacity as president of the corporation. The letters "PRES" appear after appellee's signature and the word "President," underneath appellee's signature, is circled. Appellant signed the August 3, 1992 note only in his individual capacity.
Appellant sets forth two assignments of error each pertaining to the trial court's decision to grant appellee's motion for summary judgment. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day WarehousingCo. (1976), 54 Ohio St.2d 64, 66. See, also, Civ.R. 56(C).
On or about November 4, 1992, the bank assigned all of its right, title, and interest in the "Compost Wholesalers, Inc." notes to appellant. Based on this assignment, appellant is now attempting to collect $20,653.56 from appellee. The starting point to a determination of appellee's liability for the $20,653.56 begins with an examination of appellee's liability on the instruments themselves. Therefore, we first address appellant's second assignment wherein he alleges that:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT HELD THAT NO GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER THE DEFENDANT HAD A CONTINUING LIABILITY WITH RESPECT TO THE FIVE PROMISSORY NOTES HE GUARANTEED."
Appellee signed each of the first five notes twice. He signed once in his capacity as president of the corporation and then again in his individual capacity. To the extent appellee signed each of the first five notes in his representative capacity (i.e., as president of the corporation), he cannot be held personally liable on that basis. R.C. 1303.42(B) (1).
Appellee's personal liability on the first five notes for having signed them in his individual capacity presents a different question. Appellee asserts that because the first five notes are stamped "PAID BY RENEWAL" they are deemed paid in full by the bank effectively discharging him from any further or continuing obligation relating to those notes. Appellee cites R.C. 1303.69(A)(1) in support.
R.C. 1303.69 governs the discharge of negotiable instruments by cancellation or renunciation. It provides:
 "(A) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument in either of the following ways:
 "(1) By surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, the addition of words to the instrument indicating discharge, or any other intentional voluntary act;
 "(2) By agreeing not to sue or otherwise renouncing rights against the party by a signed writing.
 "(B) Cancellation or striking out of an indorsement pursuant to division (A) does not affect the status and rights of a party derived from the indorsement."
By relying on R.C. 1303.69 (A) (1), appellee is essentially arguing that the words "PAID BY RENEWAL" stamped on a note effects a cancellation or discharge of that note. In contrast, appellant asserts that the "PAID BY RENEWAL" stamp evidences that the notes were merely renewed, thereby not extinguishing appellee's liability on them. Neither party cites case law in support of their respective construction of the words "PAID BY RENEWAL." Nor did either party introduce any evidence in the trial court below establishing the import of these words. Our review of the relevant case law reveals that Ohio jurisprudence has yet to address this issue.
The Supreme Court of Virginia squarely addressed the issue inGullete v. Federal Deposit Insurance Corporation
(1986), 231 Va. 486). George L. Gullette, along with his business partner Tom L. Barrow, executed a promissory note payable to Aquia Bank and Trust Company (bank) in 1979. In 1980, Barrow along with some other parties who were not on the 1979 note executed a renewal note of the 1979 note. Gullette was not a party to the 1980 note.
The 1980 note went into default and the bank demanded payment from Gullette on the 1979 note. Relying on Virginia's statute governing the discharge of negotiable instruments by cancellation or renunciation,[1] Gullette argued that the 1979 note was cancelled when stamped with the words "PAID BY RENEWAL."
The court looked first to Virginia's case law treatment of the word "paid" marked on an original note which was subsequently renewed into a new or renewal note. The court cited precedent holding that an original note marked "paid" and then surrendered is insufficient to establish cancellation.Id. at 491. The court then went on to hold that "if a note is marked 'paid,' then surrendered, and yet those facts do not by themselves establish cancellation, then neither can cancellation be established because a note is marked 'PAID BY RENEWAL,' then retained." Id.
Unlike Virginia, Ohio has not addressed the specific effect of the word "paid" stamped on a note. However, Ohio's discharge by cancellation or renunciation statute has been interpreted as requiring "that surrender of the instrument be accompanied by an intent to discharge the party to whom the instrument is delivered." Kinney v. Columbus Temperature Control Co. (1981),2 Ohio App.3d 396, 398; Gardner v. McClusky (Ind.App. 5 Dist. 1995), 647 N.E.2d 1, 6. In the case sub judice no such evidence of intent was presented.
Finding Virginia's approach to this issue persuasive, we hold that a note stamped "PAID BY RENEWAL," standing alone, is insufficient to establish cancellation under R.C. 1303.69(A) (1). For this reason, we find that the December 19, 1989, September 10, 1990, September 17, 1990, and October 1, 1990 notes which bear the stamp "PAID BY RENEWAL" were not cancelled in accordance with R.C. 1303.69(A)(1). The June 18, 1990 note is not stamped "PAID BY RENEWAL" and bears no other marks indicative of cancellation that would be in accordance with R.C. 1303.69(A)(1).
Since none of the first five notes were cancelled in accordance with R.C. 1303.69(A) (1), appellee cannot establish discharge by cancellation. This being the only defense appellee raised and asserted in his motion for summary judgment, the trial court erred in granting the motion as to those notes. Our holding does not preclude appellee from demonstrating, on remand, discharge by some other prescribed means. See R.C.1303.66.[2]
Accordingly, appellant's second assignment of error has merit.
Appellant alleges in his first assignment of error that:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT HELD THAT NO GENUINE ISSUES OF MATERIAL FACT EXISTS AS TO WHETHER THERE WAS A CONTRACT BETWEEN PLAINTIFF AND DEFENDANT THAT EACH WOULD GUARANTEE THE PROMISSORY NOTES OF COMPOST WHOLESALERS, INC."
Within his first assignment of error, appellant presents three separate issues for review. In his first issue presented for review, appellant argues that it is clear that material issues of fact exist as to whether there was an oral contract between appellant and appellee that each would personally guarantee each of the notes of the corporation. Appellant cites to his affidavit, contained in his memorandum in opposition to appellee's motion for summary judgment, to support his contention that genuine issues of material fact exist. The affidavit states, in pertinent part, as follows:
 "During the period December 19, 1989 through August 3, 1992, the Corporation from time to time borrowed funds for necessary working capital from the Mahoning National Bank (Bank) and signed a series of six (6) separate promissory notes, herein collectively referred to as Guaranteed Notes, copies of which are attached hereto as Exhibits A, B, C, D, E and F. The Bank required that each promissory note be guaranteed. The defendant and I [appellant] orally agreed that each would personally guarantee payment of said promissory notes. This was necessary in order for the Corporation to receive necessary working capital from the Bank. Each of the promissory notes was signed by the defendant as president of the Corporation. The defendant then asked me to guarantee each promissory note with the understanding that the defendant would also guarantee each promissory note. The defendant guaranteed payment of the first five promissory notes dated December 19, 1989, June 18, 1990, September 10, 1990, September 17, 1990 and October 1, 1990. The final promissory note, attached hereto as Exhibit F, is dated August 3, 1992. I personally guaranteed this note in reliance upon my agreement with defendant that he would also guarantee said note and based on his past performance of guaranteeing each promissory note."
Ohio's Statute of Frauds provides, in part, as follows:
 "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C. 1335.05.
The statute's purpose is:
 "* * * to secure the highest and most satisfactory species of evidence [i.e., a writing,] in cases where parties, without apparent benefit to themselves, enter into stipulations of suretyship; and where there would be great temptation, on the part of creditors, in danger of losing their debts by the insolvency of their debtors, to support suits by means of false evidence, by coloring conversations and exaggerating words of commendation or expressions of encouragement into positive contracts. * * *" Crawford v. Edison
(1887), 45 Ohio St. 239, 245
In Builder Appliance Supply, Inc. v. Hughes (1983), 13 Ohio App.3d 207,209, the Tenth District Court of Appeals explained:
 "Thus, when the promise is not a promise to answer for the debt of another, or when the promisor may expect to derive a benefit from his promise, the rationale behind the statute requiring a writing ceases to exist. As the Ohio Supreme Court explained, a court may employ either of these two tests in determining whether the action is barred by R.C. 1335.05: it may consider whether the promisor's promise is original and the promisor becomes primarily liable for the debt; and, if the promise is a collateral promise, the court may consider whether the promisor's leading object in making the promise was to promote his own interests. Wilson Floors Co. v. Sciota Park, Ltd. (1978), 54 Ohio St.2d 451, 458-459 * * *."
Appellant's argument that genuine issues of material fact exist as to whether there was an oral contract between appellant and appellee that each would personally guarantee each of the notes of the corporation is without merit. Appellee signed each of the first five notes in his individual capacity thereby expressly and unambiguously agreeing in writing to personally guarantee them. Concerning these notes, appellant's reliance on an oral contract is misplaced and unnecessary. By the express written terms of the first five notes, appellee is personally liable thereon to the extent he is unable to establish discharge. As we indicated under appellant's second assignment of error, appellee has failed to establish discharge by cancellation.
Appellee signed the sixth and final note dated August 3, 1992 only in his representative capacity (i.e., as president of the corporation). To find that appellee orally agreed to personally guarantee this note would conflict with the intention of appellee as clearly expressed in the written agreement. Additionally, such a finding would be contrary to R.C.1303.42(B) (1) which provides that a person unambiguously signing an instrument only in his representative capacity cannot be held thereon. Moreover, appellant has not demonstrated or even alleged that appellee made the alleged promise to pay for the corporation's debts in order to subserve or promote appellee's own interests.
In his second issue presented for review under his first assignment of error, appellant argues that there was an implied contract between appellant and appellee that appellee would guarantee each of the notes of the corporation. Appellant states that over a period of years, appellee signed a total of five notes as president of the corporation, and that in each instance, appellant and appellee would then both individually guarantee each note. Appellant argues that by the time the sixth note, dated August 3, 1992, was presented to appellant, a pattern of conduct had been established by appellee wherein appellant, in reliance on such conduct, personally guaranteed the note.
"If a contract is implied in fact, there is no express agreement. Therefore, the meeting of the minds is proven by the 'surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding.'Legros v. Tarr (1989), 44 Ohio St.3d 1, 6-7, 540 N.E.2d 257, 263." State ex rel. Mallory v.Pub. Emp. Retirement Bd. (1998), 82 Ohio St.3d 235, at 249-250.
Appellant's argument that genuine issues of material fact exist as to whether there was an implied contract between appellant and appellee that appellee would personally guarantee each of the notes of the corporation is without merit. Appellee signed each of the first five notes in his individual capacity thereby expressly and unambiguously agreeing in writing to personally guarantee them. Concerning these notes, appellant's reliance on an implied contract is misplaced and unnecessary. By the express written terms of the first five notes, appellee is personally liable thereon to the extent he is unable to establish discharge. As we indicated under appellant's first assignment of error, appellee has failed to establish discharge by cancellation.
Appellee signed the sixth and final note dated August 3, 1992 only in his representative capacity (i.e., as president of the corporation). To find an implied contract on the part of appellee to personally guarantee this note would conflict with the intention of appellee as clearly expressed in the written agreement. Furthermore, such a finding would be contrary to R.C. 1303.42(B) (1) which provides that a person unambiguously signing an instrument only in his representative capacity cannot be held liable thereon.
In his third issue presented for review under his first assignment of error, appellant argues that appellee is bound by a quasi-contract to reimburse appellant for the costs incurred in guaranteeing the sixth note. Appellant states that appellee fraudulently induced appellant into guaranteeing the sixth note dated August 3, 1992. Appellant argues that he guaranteed the sixth note, with the understanding that appellee would also guarantee the note.
In Hummel v. Hummel (1938), 133 Ohio St. 520, the Supreme Court of Ohio stated:
 "In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts." Id. at 525
In LH Leasing Co. v. Dutton (1992), 82 Ohio App.3d 528, the Third District Court of Appeals identified three elements necessary to succeed in an action based on quasi-contract: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Id., citing Hambletonv. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183.
"The doctrine of unjust enrichment is a fundamental principle of justice found at the basis of an action in quasi-contract.Paugh Farmer, Inc. v. Menorah Home forJewish Aged (1984), 15 Ohio St.3d 44, 46, 15 OBR 142, 144,472 N.E.2d 704, 706; 18 Ohio Jurisprudence 3d (1980) 273, Contracts, Section 345. A quasi-contract, or contract implied in law, is a legal construct created to provide a contract-like remedy where none was previously available and equity demands a just result. Paugh Farmer, Inc., supra; 18 Ohio Jurisprudence 3d (1980) 266, Contracts, Section 342."Morehead v. Conley (1991), 75 Ohio App.3d 409, 412-413. In contrast to express contracts or contracts implied in fact, obligations recognized pursuant to theory of unjust enrichment arise by operation of law and do not depend on the intentions of the parties.
"Generally, the rule of law regarding liability on quasi-contracts, or contracts implied in law, has no application if a valid and enforceable contract exists between the parties. Creighton v. Toledo (1860), 18 Ohio St. 447." Baerv. Woodruff (1996), 111 Ohio App.3d 617, 620.
Appellant's argument that genuine issues of material fact exist as to whether appellee is bound in quasi-contract is without merit. Appellant has not demonstrated or alleged a direct benefit conferred upon appellee by means of the bank loan. In addition, the face of the August 3, 1992 note clearly indicates the express intent of appellee not to individually guarantee the note. Again, to find appellee personally liable on the sixth note would be contrary to R.C. 1303.42(B) (1) which provides that a person unambiguously signing an instrument only in his representative capacity cannot be held thereon.
Accordingly, appellant's first assignment of error is without merit.
The judgment of the trial court is hereby affirmed as to the sixth note dated August 3, 1992 and reversed as to the remaining five notes and this matter is hereby remanded for further proceedings according to law and consistent with this court's opinion.
Cox, J., concurs
Waite, J., concurs
APPROVED:
 ------------------------- Gene Donofrio Presiding Judge
[1] At the time Gullette was decided Virginia's discharge statute was found in Code § 8.3-605 and provided as follows:
 "(1) The holder of an instrument may even without consideration discharge any party
 "(a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or
 "(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.
 "(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto."
In 1992, the Virginia legislature amended the discharge statute. It can now be found in Code § 8.3A-604 and provides as follows:
 "(a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not sue or otherwise renouncing rights against the party by a signed writing.
 "(b) Cancellation or striking out of an indorsement pursuant to subsection (a) does not affect the status and rights of a party derived from the indorsement."
[2] "The obligation of a party to pay the instrument is discharged as stated in [Ohio Revised Code Chapter 1303] or by an act or agreement with the party that would discharge an obligation to pay money under a simple contract."