In re MAR–KE ASSOCIATES,
INC. Debtor.

James R. Kandel, Trustee Plaintiff,

v.

R.C. Miller Refuse Services,
Inc. Defendant.

Bankruptcy No. 96–63091.
Adversary No. 98–6270.

United States Bankruptcy Court,
N.D. Ohio.

May 26, 1999.

868

Anthony DeGirolamo, Esq., Roetzel & Andress, Akron.

Gerald Baker, Esq., Canton.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Pending before the Court is an Amended Complaint filed by the Plaintiff, James R. Kandel, the Chapter 7 Trustee (Trustee) for Mar–Ke Associates, Inc. (Debtor), seeking a finding that the Defendant, R.C. Miller Refuse Services, Inc. (R.C. Miller), breached an agreement allegedly entered into between the Debtor's president, Dennis Ostrowski, and R.C. Miller. In the alternative, the Trustee seeks a finding that R.C. Miller breached a fiduciary duty which it allegedly owed to the Debtor as a joint venturer. A trial was conducted and the matter was taken under advisement. For the reasons that follow, the Trustee's demand for relief will be DENIED.

### FACTS

The Debtor was an Ohio corporation founded in 1991. It engaged in the removal and disposal of railroad debris. Mr. Ostrowski, who was the founder and principal of the Debtor, had previously been employed with Consolidated Rail Corporation (Conrail) in various positions. Mr. Ostrowski testified at trial that he left Conrail in 1990 and subsequently was hired by Conrail as a consultant to locate a company with the ability to clean railroad cars. Mr. Ostrowski received $5,000.00 from Conrail as compensation for his services.

In the course of his duties, Mr. Ostrowski identified R.C. Miller as the only potential car cleaning site which came close to matching Conrail's standards in awarding such a contract. It is undisputed that R.C. Miller did not immediately qualify as a rail car cleaning site under Conrail's standards and had no prior experience in rail car cleaning. From November, 1991 through December, 1992, Mr. Ostrowski assisted R.C. Miller in developing its bid for the rail car cleaning contract with Conrail. For example, in January, 1992, Mr. Ostrowski took employees of R.C. Miller to view an existing car cleaning facility. However, the parties dispute the extent of Mr. Ostrowski's efforts in assisting R.C. Miller to obtain the contract with Conrail.

In April, 1992, the Debtor, through Mr. Ostrowski, prepared a contract which would have provided compensation for its services in assisting R.C. Miller to obtain the contract with Conrail. See, Trustee Exhibit # 9. That contract provided that the Debtor would be paid ten percent of the revenue generated by R.C. Miller if R.C. Miller was awarded the contract with Conrail (10% contract). Mr. Ostrowski testified that this contract was based upon prior oral discussions he had with R.C. Miller, Sr., the president of R.C. Miller, regarding appropriate compensation for assisting R.C. Miller in obtaining the contract with Conrail. Mr. Miller, however, denies ever having such a conversation and refused to sign the 10% contract.

In October, 1992, Conrail and R.C. Miller entered into a contract in which R.C. Miller would clean and dispose of debris accumulated on Conrail's property for a period of three years. The contract provided for an increase of compensation paid to R.C. Miller over each year of the contract. Through the life of the contract, it is estimated that R.C. Miller cleaned 6,889 rail cars for Conrail. See, Trustee Trial Brief, at p. 3. Mr. Ostrowski claims that he monitored the rail car cleaning operation after the contract was awarded to R.C. Miller. The Trustee claims that under the increased compensation scale provided to R.C. Miller in the contract, R.C. Miller was paid at least $3,645,125.00 from Conrail for its services.

In February, 1993, Mr. Ostrowski was presented with a contract prepared by R.C. Miller which provided that the Debtor would receive $10.00/car for the first 1,500 cars cleaned per year, $15.00/car for the next 1,500 cars cleaned per year, and $25.00/per car for each car in excess of 3,000 cars per year as compensation for helping R.C. Miller in obtaining the contract with Conrail ($10/car contract). *See,* Trustee Exhibit # 13. The $10/car contract also provided that the Debtor would receive a commission of 10% on recovered railroad ties and ballast that the Debtor could sell. Mr. Ostrowski admitted receiving a commission on the sale of railroad ties. Mr. Ostrowski also acknowledged signing the $10/car contract at his home without any pressure being exerted by R.C. Miller. R.C. Miller also alleges that the Debtor was overpaid $24,607.17 under the $10/car contract and that it has a valid claim of $88,344.47 against the Debtor's bankruptcy estate.

### DISCUSSION

The Court has jurisdiction in this adversary proceeding by virtue of Section 1334(b) of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (O). This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Trustee has presented two alternative theories to recover damages from R.C. Miller. First, the Trustee claims that the 10% contract was a binding contract between R.C. Miller and the Debtor based on the oral discussions in which the parties engaged regarding the Debtor's appropriate compensation for assisting R.C. Miller in obtaining the Conrail contract. The Trustee claims that Mr. Ostrowski later signed the $10/car contract only because he believed that he would otherwise receive nothing for his services. The Trustee's alternative theory for recovery is that the Debtor and R.C. Miller had a joint venture whereby they acted together to procure the rail car cleaning contract with Conrail. The Trustee alleges that R.C. Miller breached the fiduciary duty it owed to its joint venturer, the Debtor, by refusing to execute the 10% contract and instead forcing the Debtor to sign the $10/car contract after R.C. Miller had been awarded the rail car cleaning contract with Conrail. The Court, however, does not find either of the Trustee's arguments to be well taken.

### *Alleged Oral Contract Between R.C. Miller and the Debtor*

The Court finds from the evidence, that the executed $10/car contract was the binding agreement between the parties. The Ohio Supreme Court has rather recently reviewed the meaning of the parol evidence rule in *Ed Schory & Sons, Inc. v. Society National Bank,* 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996):

> [T]he parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements.... "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." (citations omitted)

*Ed Schory & Sons, Inc.,* 75 Ohio St.3d at 440, 662 N.E.2d 1074.

It is clear that the 10% contract prepared in April, 1992, by Mr. Ostrowski and any oral discussions prior thereto between R.C. Miller, Sr. and Mr. Ostrowski are barred by the parol evidence rule through the subsequent $10/car contract signed by both parties in February, 1993. It is un-

disputed that the 10% contract was never signed by R.C. Miller and thus cannot be a binding agreement between the parties. Mr. Ostrowski testified that he signed the $10/car contract at his home without any undue pressure being exerted by R.C. Miller. Furthermore, R.C. Miller, Sr. testified that Mr. Ostrowski never complained about the terms of the $10/car contract. The Trustee also did not meet his burden of proving that the parties ever intended the Debtor to receive 10% of the revenues generated from the Conrail contract. R.C. Miller, Sr. denied ever agreeing to such an arrangement and the Trustee did not present any additional evidence besides the testimony of Mr. Ostrowski that such an arrangement was ever contemplated. Accordingly, the Court finds that any alleged 10% arrangement between the parties was superceded by the executed $10/car contract and any evidence regarding any prior agreement is barred from the Court's consideration by the parol evidence rule.

### Joint Venture

■ Alternatively, the Trustee claims that a joint venture existed between the Debtor and R.C. Miller and R.C. Miller breached its fiduciary duty owed to the Debtor by entering into the $10/car contract instead of the alleged 10% contract. Again, we look to the Ohio Supreme Court for the definition of a joint venture:

[A] joint venture is . . . an association of persons *with intent, by way of contract,* express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers . . . (Paragraph one of the syllabus in *Ford v. McCue,* 163 Ohio St.

498, 127 N.E.2d 209, approved and followed).

*Al Johnson Construction Co. v. Kosydar,* 42 Ohio St.2d 29, 325 N.E.2d 549 (1975) (syb.1) (emphasis added). Another Ohio court has summarized the requirements for the existence of a joint venture as follows:

[T]he first requirement is a joint contract. A joint contract can be express or implied by the parties. The second requirement is an intention to associate themselves as joint venturers. The parties must have actually intended to become joint venturers. The third requirement is a community of interest and joint control. This gives the joint venturers the right to direct or the authority to control the purpose of the venture. The fourth requirement is an agreement for the division of the profit and loss. Between the joint venturers there must be a sharing of the profits and losses jointly, not severally.

*L & H Leasing Co. v. Dutton,* 82 Ohio App.3d 528, 532, 612 N.E.2d 787 (Ct.App. 1992).

Upon a review of these elements, the Court finds that a joint venture did not exist between the Debtor and R.C. Miller to support the Trustee's claim of a breach of fiduciary duty by R.C. Miller. From the evidence presented, the Court cannot find that the Trustee has met his burden to prove that R.C. Miller and the Debtor both intended to associate themselves as joint venturers. First, it is clear that Mr. Ostrowski was not initially working with R.C. Miller as a joint venturer. Rather, Mr. Ostrowski was being paid as a consultant by Conrail to locate a rail car cleaning facility. R.C. Miller, Sr. testified that he was initially informed by Mr. Ostrowski of his contractual arrangement with Conrail. Upon investigation, Mr. Ostrowski identified R.C. Miller as the most viable facility to clean rail cars and dispose of railroad debris for Conrail. Mr. Ostrowski may have assisted R.C. Miller in becoming familiar with the rail car cleaning business

but his participation did not rise to the level of a joint venturer with R.C. Miller. The contract between Conrail and R.C. Miller did not mention any involvement of the Debtor. Further, Mr. Ostrowski admitted that only R.C. Miller was a party to the car cleaning contract with Conrail.

Second, the Trustee presented insufficient evidence to show that the Debtor had the right to direct or had the authority to control the rail car cleaning business. R.C. Miller presented testimony from its principals that it made the investment in the equipment needed to fulfill the terms of its contract with Conrail. Both R.C. Miller, Sr. and R.C. Miller, Jr. testified that Mr. Ostrowski did not oversee the operation of the car cleaning facility and did not advise them of the equipment needed to operate the facility. Further, both R.C. Miller, Sr. and Jr. stated that they never directed Mr. Ostrowski to act on their behalf to obtain the contract with Conrail and were unaware that Mr. Ostrowski was trying to solicit the Conrail contract for R.C. Miller. These statements seem reasonable in light of the fact that Mr. Ostrowski was being paid by Conrail to locate an appropriate rail car cleaning site. Moreover, the only valid contract between the Debtor and R.C. Miller specifically provided that the $10/car contract was intended as compensation for the Debtor in helping to secure R.C. Miller's contract with Conrail. The terms of this contract and the testimony of its principals indicate that R.C. Miller wanted to compensate the Debtor for its efforts but in no way intended that the Debtor should participate as a joint venturer in its contract with Conrail.

Furthermore, the evidence presented did not reveal any agreement between the Debtor and R.C. Miller to jointly share profits and losses. As mentioned above, the $10/car contract was specifically pro-vided in order to compensate the Debtor for its assistance in securing the Conrail contract. There was nothing in the $10/car contract or in any other document submitted by the Trustee which provided that the Debtor would share any profits with R.C. Miller that were generated under the Conrail contract. Moreover, there has been no evidence presented indicating that the Debtor agreed to share any losses if R.C. Miller was not awarded the Conrail contract. In fact, the Debtor was guaranteed to receive $5,000.00 from Conrail for its consulting services while R.C. Miller would have incurred losses at a minimum of its time and labor invested in attempting to obtain the Conrail contract if that contract had not been awarded. There is also no indication that the Debtor would experience any losses which might have occurred during the performance of the Conrail contract while R.C. Miller certainly incurred at a minimum costs of equipment and labor. Therefore, the Court finds that the Trustee has failed to meet his burden in proving that a joint venture existed between the Debtor and R.C. Miller. Accordingly, the Trustee's Complaint shall be DISMISSED.[1]

---

1. In its closing argument, R.C. Miller alleged it was entitled to an award of damages in an unspecified amount for the Debtor's conversion of railroad ties and overpayment under the $10/car contract. R.C. Miller, however, presented no evidence to support that assertion. Accordingly, the Court will deny R.C. Miller's counterclaim.