OPINION *Page 2 
{¶ 1} Plaintiff-appellant American Railroad Construction, Inc. appeals the judgment of the Columbiana County Common Pleas Court entered in favor of defendant-appellee Columbiana County Port Authority. The issue on appeal is whether appellant should have prevailed on its unjust enrichment claim. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} The Port Authority owns a railroad right of way. In April 2000, they leased the right to operate the railway to Central Columbiana and Pennsylvania Railway Corporation [the operator]. In that lease, the Port Authority agreed to initially fund improvements to the line to place it in a certain federally-rated condition. The Port Authority received grants and borrowed funds to fulfill this obligation. After this initial improvement, the operator, who had an option to purchase the right of way, had the right and duty to maintain the track at its sole cost and expense.
 {¶ 3} On March 9, 2004, a train derailed at a crossing in Columbiana County. Apparently, the operator entered a verbal agreement with appellant to repair the tracks at the location of the derailment in order to make the railroad operational. It is claimed the operator agreed to pay $11,500 for the cost of appellant's services. The work was mostly performed from May 11 through May 17, 2004.
 {¶ 4} Appellant billed the operator pursuant to the verbal agreement, but the operator then filed for Chapter 11 bankruptcy. Thus, appellant filed a bankruptcy claim as a creditor. When the claim was unsuccessful, appellant began billing the Port Authority instead. However, the Port Authority refused to pay the $11,500 invoice. Appellant then filed a complaint against the Port Authority demanding $11,500 in damages on the theory of unjust enrichment. The case was tried to the court on February 2, 2006.
 {¶ 5} Appellant's president testified that he was hired by the operator to make emergency repairs to the right of way for $11,500. He stated that another company performed some excavation work while removing the damaged train cars and that his *Page 3 
company had to finish grading and install new rails. (Tr. 18-19, 35-37). He also testified that while he was performing the repairs, a representative of the Port Authority made him stop working to answer questions about how long he had been in business and what caused the derailment. (Tr. 23-23, 34). He assumed the man was the Chief Executive Officer of the Port Authority, Tracy Drake. However, after meeting Mr. Drake at trial, he noted that the person he spoke to was not in fact Mr. Drake. (Tr. 23). He concluded that his repairs added value to the railway and noted that the old tracks were in bad shape. (Tr. 20).
 {¶ 6} Mr. Drake testified as to the terms of the lease with the operator, including the fact that all maintenance on the track was the duty of the operator at its sole cost and expense. He disclosed that he was not aware that appellant was hired or had performed the repairs, and he explained that the Port Authority did not operate the railroad, oversee the daily operations or supervise repairs. (Tr. 45, 52, 54, 62). He also stated that no one from the Port Authority advised him that they met with appellant's president. (Tr. 45, 56).
 {¶ 7} Although there were no allegations that the Port Authority actually entered a contract, Mr. Drake pointed out that he is the only person authorized to enter contracts, and that by law, any contracts must be submitted to the Board of Directors in order to be valid. (Tr. 55). He also noted that in 2004, state law required Port Authority contracts over $10,000 to be in a mandatory writing. (Tr. 55-56).
 {¶ 8} Mr. Drake then explained that a new operator stepped into the bankrupt operator's shoes for purposes of the lease. (Tr. 47). To dispute that appellant conferred a benefit on the Port Authority, however, he opined that this new operator would have agreed to the terms of the lease even if the work had not been performed by appellant. This opinion relied on the fact that the new operator spent four million dollars on upgrading the tracks upon assuming the lease. (Tr. 47-49).
 {¶ 9} The trial court took the case under advisement to examine the pretrial and posttrial briefs. On February 16, 2006, the trial court found in favor of the Port Authority. Appellant filed timely notice of appeal from this judgment.
 ASSIGNMENT OF ERROR {¶ 10} Appellant's sole assignment of error provides: *Page 4 
 {¶ 11} "THE TRIAL COURT ERRED WHEN IT MADE FINDINGS IN FAVOR OF THE DEFENDANT, COLUMBIANA COUNTY PORT AUTHORITY, THAT IT WAS NOT UNJUSTLY ENRICHED BY THE UNCOMPENSATED WORK OF THE PLAINTIFF, AMERICAN RAILROAD CONSTRUCTION, INC."
 {¶ 12} Appellant contends that it offered sufficient evidence to establish the unjust enrichment of a non-contracting third party who benefited from the uncompensated work of a contracting party. Appellant urges that its work conferred a benefit on the Port Authority by adding value to the track and that it would be inequitable for the Port Authority to retain that benefit without providing compensation to appellant for its work. Appellant focuses on the claim of its own president that the Port Authority had knowledge of the work being performed, urging that the Port Authority had an active role in overseeing the repairs.
 {¶ 13} The Port Authority responds by denying that it had knowledge of appellant's work or that it played a role in repair work, noting that the trial court was in the best position to judge credibility concerning whether there was knowledge of the benefit while it was being conferred. The Port Authority also contends that there is no unjust enrichment where appellant does not have superior equity, reiterating that the operator entered the contract and the operator had the duty to maintain the line. Furthermore, the Port Authority states that unjust enrichment does not apply when a contract actually exists.
 LAW ANALYSIS {¶ 14} There are three types of contracts: express, implied in fact and implied in law. Legros v. Tarr (1989), 44 Ohio St.3d 1, 6-7. An express contract is a written or verbal meeting of the minds. Id. An implied in fact contract can exist where the surrounding facts and circumstances rather than written or spoken words show a meeting of the minds by tacit understanding of an agreement. Id. An implied in law contract is a legal fiction also called quasi-contract because it is not characterized by a meeting of the minds but rather is based upon unjust enrichment and a need for restitution. Id. This is the type of contract sought to be imposed in this case.
 {¶ 15} Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." Johnson v.Microsoft Corp., *Page 5 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 20, quoting Hummel v.Hummel (1938), 133 Ohio St. 520, 528. In order to establish a quasi-contractual claim for restitution due to unjust enrichment, the plaintiff must demonstrate the following: (1) a benefit conferred by the plaintiff on the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment, i.e. unjust enrichment. Id. at ¶ 20, citing Hambleton v. R.G. BarryCorp. (1984), 12 Ohio St.3d 179, 183. The purpose of the doctrine is not to compensate the plaintiff for any loss or damages but to compensate him for the benefit he has conferred on the defendant. Id. at ¶ 21, citing Hughes v. Oberholtzer (1954), 162 Ohio St. 330, 335.
 {¶ 16} As aforementioned, the Port Authority argues that unjust enrichment does not apply when a contract actually exists. However, the two cases they cite only apply to the situation where a contract exists between the plaintiff and the defendant. Euclid Ashpalt Paving Co.,Inc. v. Mount Zion Fellowship Church, 11th Dist. No. 2004-L-175,2005-Ohio-7045, ¶ 52; All Occasion Limousine v. HMP Events, 11th Dist. No. 2003-L-140, 2004-Ohio-5116, ¶ 25. That is, if the plaintiff and the defendant have a contract on the matter, then quasi-contract or unjust enrichment is not available as a claim by that plaintiff against that defendant absent fraud, illegality or bad faith. Aultman Hosp. Assn. v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 54. This does not prohibit a quasi-contract action against a defendant merely because the plaintiff had a contract with someone else. In fact, a great many quasi-contract actions arise in this very manner.
 {¶ 17} The Port Authority also argues that Ohio Supreme Court case law precludes an unjust enrichment claim against a lessor by a lessee's contractor. However, both cases cited in the Port Authority's brief deal with the contractor's inability to enforce a statutory mechanic'slien against the lessor in a case of nonpayment by the lessee.Romito Bros. v. Frank A. Flannery, Inc. (1974), 40 Ohio St.2d 79;Mahoning Park Co. v. Warren Home Dev. Co. (1924), 109 Ohio St. 358.
 {¶ 18} Those cases do not deal with the distinct issue of imposing a quasi-contract for recovery of the value of the work performed. See, e.g., Clifton v. Malone (Nov. 22, 1989), 4th Dist. No. 429; Paul VlackCo. v. Banc Ohio Nat. Bank (Aug. 11, *Page 6 
1988), 10th Dist. No. 87AP-1121; Vanosdell Mech., Inc. v. MarionPlaza, Inc. (May 23, 1988), 2d Dist. No. 2373; Banks v.Cincinnati (1986), 31 Ohio App.3d 54, 57 (1st Dist.); Kazmier v.Thorn (1978), 63 Ohio App.2d 29, 32 (6th Dist.). See, also,Construction One, Inc. v. Shore Thing, Inc., 8th Dist. No. 81135, 2003-Ohio-292, ¶ 20-22, 28 (disposing of the lien issue and then separately discussing unjust enrichment on the merits); GuardianTech., Inc. v. Chelm Prop., Inc., 8th Dist. No. 80166, 2002-Ohio-4893, ¶ 8-13 (general rule has exception where unjust enrichment of non-contracting third party who benefits from uncompensated work of a party to the contract).
 {¶ 19} One of the main features of quasi-contract is that it doesnot entail a meeting of the minds as does an express or an implied in fact contract. Legros, 44 Ohio St.3d at 7. It is equity, not intent, that matters in applying this legal fiction. Paugh Farmer, Inc. v.Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44, 46. The entire point of the doctrine is to turn a moral obligation into a legal obligation where a known benefit is conferred upon a party and where the retention of that benefit without compensation to the conferrer would be unjust. See Hummel v. Hummel (1938), 133 Ohio St. 520, 526. Thus, the doctrine can in fact be set forth against a lessor by a contractor for a lessee.
 {¶ 20} Nonetheless, the contractor is not entitled to judgment against the lessor merely because the lessee went bankrupt before paying the contractor's invoice. Such situation is not a quasi-contract per se or an automatic contract implied in law. Rather, the contractor must present evidence on the elements of the doctrine, and the trier of fact must weigh that evidence.
 {¶ 21} The fact-finder must consider the facts in each case to determine the existence of the elements, i.e. whether a known benefit was conferred by the plaintiff upon the defendant whose retention of the benefit would be inequitable. As always, the appellate court defers to the trial court's factual determinations including its weighing of the evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. Where a decision is supported by some competent, credible evidence on each of the elements, it is not against the manifest weight of the evidence. C.E. Morris Co. v. Foley (1978), 54 Ohio St.2d 279, 280. *Page 7 
 {¶ 22} Here, the Port Authority disputed that it knew of the work being performed. The trial court can reasonably find this claim to be credible as to this contractor-appellant. However, the Port Authority knew some type of clean up and repair work was being performed by someone because they were informed of the derailment right away.
 {¶ 23} The Port Authority also denied that an actual benefit was conferred upon it because the new operator, who put four million dollars into improvements, would not have been dissuaded due to another mere $11,500 in repairs. See Guardian, 8th Dist. No. 80166 at ¶ 42, 50 (high-tech fire detection and prevention system that tenant hired contractor to install did not confer benefit on lessor since such elaborate system was unnecessary and superfluous for its needs). Still, the assignment of the lease did not occur for some months after the repair, and the tracks remained operational between the repair and the assignment due in part to appellant's repair work.
 {¶ 24} In any event, the Port Authority argued that it would be inequitable to make them pay for the obligations of the operator. To determine whether it would be inequitable for the defendant to retain an alleged benefit without providing compensation to the plaintiff (the unjust enrichment element), the trial court weighs the equities. Merely because the lessee owes a duty to the lessor and the lessee hires a contractor to assist in fulfilling this duty does not by itself make the lessor liable to the contractor. See LH Leasing Co. v. Dulton (1992),82 Ohio App.3d 528, 534 (lessor of farm equipment unsuccessfully sued landowner for now-bankrupt farmer's use of equipment on land where farmer owed landowner plowing). Here, the trial court could use its position as the fact-finder to find that appellant failed to establish a superior equity. If the plaintiff does not establish superior equity in the fact-finder's opinion, then a judgment for the defendant is proper. See Hay v. Westwood Rehab. Ctr. (Apr. 27, 1989), 7th Dist. No. 88CA142.
 {¶ 25} In conclusion, the Port Authority owned a railroad right of way. Their lessee failed to properly maintain the lines causing a train to derail. In order to clean up their mess and continue their operations, the lessee hired appellant to repair the tracks after the derailment was removed. The lessee owed the Port Authority the duty to maintain the tracks and fix the interruption caused by the derailment. Where the *Page 8 
lessee lives up to this obligation by having the repairs performed, the Port Authority is not unjustly enriched. Specifically, the Port Authority did not receive a benefit to which it was not entitled. This is so even though the lessee happens to declare bankruptcy before paying its contractor.
 {¶ 26} Although it may seem generally inequitable for appellant to forgo payment for services rendered to the now-bankrupt operator, transference of the inequity to the Port Authority would not make the situation just, it would merely change the identity of the victim. Since the Port Authority did not contract with appellant, or receive any benefit they were not contractually entitled to receive, we cannot find that the trial court unreasonably weighed the equities and determined that the Port Authority was not unjustly enriched.
 {¶ 27} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., and Waite, J., concurs. *Page 1